In The

Court of Appeals

For The

First District of Texas

____________

NO. 01-01-00463-CV

____________


ANSELL L. OSBORNE AND MARY F. OSBORNE, Appellants

V.

COLDWELL BANKER UNITED REALTORS, CAROL KAPPLER,

ROBERT M. ATKINSON, AND DENISE D. ATKINSON, Appellees

* * * 

ROBERT M. ATKINSON AND DENISE D. ATKINSON, Appellants

V.

COLDWELL BANKER UNITED REALTORS, CAROL KAPPLER,

VILLAGE OF TIKI ISLAND, AND 

OMAHA PROPERTY AND CASUALTY CO., Appellees






On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 99CV1167






O P I N I O N

 This is an appeal of summary judgments in favor of Coldwell Banker United Realtors,
Carol Kappler, and Robert M. Atkinson and Denise D. Atkinson against Ansell L. Osborne
and Mary F. Osborne and in favor of Coldwell Banker United Realtors, Carol Kappler,
Village of Tiki Island, and Omaha Property and Casualty Co. against Robert M. Atkinson
and Denise D. Atkinson. We affirm in part and reverse in part and remand the cause for
further proceedings.

BACKGROUND


 In 1982 or 1983, Robert M. Atkinson, a home builder, and his wife, Denise D.
Atkinson, built a home on one of two adjacent lots they owned on Tiki Island in Galveston
County, Texas. The house, located at 1246 Oahu, was a one-story house built on piers, as
required by the building code of the Village of Tiki Island ("the Village"). Between 1983
and 1991, the Atkinsons made several alterations and additions to the house, including a
1000 square foot enclosed area at the ground level under the main floor. This area was
finished as a living area or game room with a full bath and some kitchen facilities. The
Village's building code prohibited enclosed areas below the base flood elevation of more
than 300 square feet and required that they have non-load-bearing, break-away walls and be
used only for parking and storage. The Village's building restrictions were consistent with
the requirements of the Federal Emergency Management Agency (FEMA) and the National
Flood Insurance Program (NFIP), which also required that structures below the base flood
elevation have non-load-bearing, break-away walls and be used only for parking and storage. 
The Atkinsons obtained flood insurance on their house through the NFIP and were insured
continuously until 1999, when they sold the house to appellants, Ansell and Mary Osborne. 


 In May 1992, FEMA notified the Village that between 50 and 80 percent of the houses
in the Village were out of compliance with FEMA requirements. FEMA placed the Village
on probation and gave the Village one year in which to bring the houses into compliance or
risk losing the Village's participation in the NFIP. In the summer of 1992, Michael Loomis,
Building Administrator for the Village, informed the Atkinsons by letter that their property
at 1246 Oahu was in violation of the Village building code ordinance and/or FEMA codes. 
The letter stated that failure to correct the violations could result in the house being
uninsurable and that a complaint and citation could be issued. The letter stated the specific
violations as "Unpermitted enclosure of more than 300 sq. ft. below the base flood elevation;
appears to be habitable." 

 In about October 1992, the Village attorney, Ellis Ortego, cited the Atkinsons in
municipal court for violations of the Village building code as it related to flood insurance. 
The Atkinsons were represented by Darrell Apffel in the proceedings. Although the record
on this appeal does not contain the final judgment in the municipal court case, affidavits and
deposition testimony indicate that the municipal judge dismissed the citation. Also in
October 1992, Loomis advised FEMA that the structure at 1246 Oahu was in violation of the
Village building regulations, having a habitable enclosure below the base flood elevation,
and requested that FEMA deny flood insurance coverage to the structure pursuant to section
1316 of the National Flood Insurance Act of 1968. (1) In this letter, Loomis listed the location
of the house at 1246 Oahu as section 1, lot 63, which was the vacant lot owned by the
Atkinsons. The legal description of 1246 Oahu is section 1, lot 64. Section 1316 actions,
which apply only to buildings, are not filed on vacant lots. 

 In February 1993, after the dismissal of the municipal court action against the
Atkinsons, Apffel wrote FEMA to challenge, as a frivolous claim intended to harass the
Atkinsons, the Village's recommendation that a section 1316 notice be filed against the
Atkinsons' property at 1246 Oahu. He enclosed a professional engineer's report stating that
the walls of the house complied with FEMA regulations. The letter indicated that a copy was
sent to the Atkinsons. In March 1993, a representative of FEMA wrote Apffel in response
to Apffel's challenge to the section 1316 notice. The letter referenced "Implementation of
Section 1316 of the National Flood Insurance Act of 1968" and explained that, under section
1316, an owner would suffer, in addition to the denial of flood coverage, the loss of potential
federal disaster assistance after a loss and the denial of grants and loans from federal
agencies for development or construction. The letter outlined the steps to be taken to restore
flood insurance coverage after a section 1316 determination has been applied to a structure. 
These steps included "a clear and unequivocal statement by an authorized public body
rescinding the declaration [of a violation] and giving the reason(s) for the rescission." A
copy of this letter was sent to the mayor of the Village. 

 In July 1993, Ortego wrote Apffel in response to Apffel's request to cancel the section
1316 restriction on the Atkinson's property at 1246 Oahu based on the outcome of the
municipal court hearing in which the Atkinsons were found not guilty of alleged violations
of the Village ordinances. Ortego gave his opinion, as Village attorney, that a finding of not
guilty in the municipal court was not determinative of imposition of section 1316. Ortego
further stated that, when the property was in compliance with FEMA requirements, as
established by an inspection by the Village, the Village would request a cancellation of the
section 1316 notice on the house. 

 The Atkinsons continued to renew their flood insurance coverage on the house each
year. At least once after the Atkinsons received notice of the imposition of section 1316 on
their property, Denise Atkinson asked their insurance agent to check on the existence of a
section 1316 restriction on the house. The agent told her that, if a section 1316 notice had
been filed on the property, it would show up at renewal time. Because the section 1316
restriction was listed on the empty lot adjacent to the Atkinson's house, the Atkinsons were
never denied renewal of their flood insurance during the time they owned the house. 

 In 1999, the Atkinsons listed their house at 1246 Oahu with Coldwell Banker United
Realtors ("Coldwell Banker") through Carol Kappler, a real estate agent. Kappler had owned
property in the Village since 1988, had been a full-time resident since 1990, and had worked
with Coldwell Banker selling real estate in the Village since 1994. The Oahu house was
listed as having a "large game room." The Osbornes were interested in purchasing the house
because the game room and a full bath were on the ground level, and Mrs. Osborne had back
problems that made it difficult for her to climb stairs. Kappler told the Osbornes, "You could
live downstairs." The Osbornes asked if the house was eligible for flood insurance, and the
Atkinsons either told them it was or showed them their insurance policy to indicate that flood
insurance was available. 

 In their seller's disclosure notice, the Atkinsons checked "Yes" in a box on the form
to indicate that they were aware of "Room additions, structural modifications, or other
alterations or repairs made without necessary permits or not in compliance with building
codes in effect at that time." Although the form gave an instruction to explain any "Yes"
answers in the space provided, the Atkinsons did not give any written explanation. The
Atkinsons checked "No" in a box on the form to indicate that they were not aware of "Any
notices of violations of deed restrictions or governmental ordinances affecting the condition
or use of the Property." They also checked "No" to indicate that they were not aware of
"Any lawsuits or other legal proceedings directly or indirectly affecting the Property." 

 The Osbornes asked to delay the closing date to give them time to be sure they could
get flood insurance, and the Atkinsons agreed to the delay. On February 19, 1999, the sale
of the house by the Atkinsons to the Osbornes was closed. 

 In April 1999, the Osbornes asked John Pearce, the Village's building inspector, about
remodeling the downstairs windows of the house. Pearce told them that the downstairs
enclosed area was not in compliance with the building code, but had been "grandfathered"
because of its age. However, he told them that, if they did any remodeling, they would be
required to bring the structure into compliance. He also told them that the Village had
charged the Atkinsons in municipal court with violations of FEMA regulations. In March
2000, Pearce notified FEMA that the section 1316 notice gave the wrong legal description
for 1246 Oahu and asked that the section 1316 notice be attached to lot 64 and removed from
lot 63. In June, the Osbornes received a letter from FEMA informing them that their house
was considered "a Section 1316 property." This letter explained the nature of the violation
and how to have the section 1316 notice removed. 

 The Osbornes sued the Atkinsons, Kappler, and Coldwell Banker for violations of the
Deceptive Trade Practices Act (DTPA), (2) common law fraud, fraud in a real estate
transaction, and negligent misrepresentation. The Atkinsons counterclaimed against the
Osbornes for bringing a groundless or bad faith lawsuit and cross-claimed against Coldwell
Banker and Kappler for contribution and indemnity, breach of contract, breach of fiduciary
duty, and negligence. The Atkinsons filed third-party claims against the Village, Omaha
Property and Casualty Co. ("Omaha Property"), and their agent, Rust, Ewing, Watt & Haney,
Inc. ("Rust Ewing"). Coldwell Banker filed cross-actions against the Village, Omaha
Property, and the Atkinsons and a counterclaim against the Osbornes. 

 Rust Ewing filed a motion for summary judgment, which the trial court granted. That
summary judgment was not appealed. The trial court granted the motions for summary
judgment filed by (1) the Atkinsons against the Osbornes, (2) Coldwell Banker and Kappler
against the Osbornes, (3) Coldwell Banker and Kappler against the Atkinsons, (4) Omaha
Property against the Atkinsons, and (5) the Village against the Atkinsons. (3) These last five
summary judgments are the subject of this appeal. 

DISCUSSION


Standard of Review

 Summary judgment is proper only when the movant establishes that there is no
genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 
Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Lawson v. B Four
Corp., 888 S.W.2d 31, 34 (Tex. App.--Houston [1st Dist.] 1994, writ denied). In reviewing
a summary judgment, we must indulge every reasonable inference in favor of the nonmovant
and resolve any doubts in its favor. Johnson, 891 S.W.2d at 644; Lawson, 888 S.W.2d at 33. 
We will take all evidence favorable to the nonmovant as true. Lawson, 888 S.W.2d at 33. 
In a 166a(c) motion for summary judgment, the defendant, as movant, is entitled to summary
judgment if the evidence disproves as a matter of law at least one element of each of the
plaintiff's causes of action. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991);
Marchal v. Webb, 859 S.W.2d 408, 412 (Tex. App.--Houston [1st Dist.] 1993, writ denied). 

 Under rule 166a(i), a party is entitled to summary judgment if, after adequate time
for discovery, there is no evidence of one or more essential elements of a claim or defense
on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). 
Thus, a no-evidence summary judgment is similar to a directed verdict. Flameout Design &
Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.--Houston [1st
Dist.] 1999, no pet.). The motion for summary judgment may not be general, but must state
the elements on which there is no evidence. Tex. R. Civ. P. 166a(i). The trial court must
grant the motion unless the nonmovant produces more than a scintilla of evidence raising a
genuine issue of material fact on each of the challenged elements. See id.; Macias v. Fiesta
Mart, Inc., 988 S.W.2d 316, 317 (Tex. App.--Houston [1st Dist.] 1999, no pet.). The party
with the burden of proof at trial has the same burden of proof in the summary judgment
proceeding. Galveston Newspapers, Inc. v. Norris, 981 S.W.2d 797, 799-800 (Tex.
App.--Houston [1st Dist.] 1998, pet. denied). In reviewing a summary judgment, we must
indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its
favor. Flameout Design, 994 S.W.2d at 834. 

 If the judgment does not specify the ground relied on, we will affirm the summary
judgment if any theory advanced in the motion for summary judgment and preserved on
appeal is meritorious. See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex.
1993). 

I. The Osbornes' Claims

 In their petition, the Osbones alleged that the Atkinsons told them there were no
problems with the flood insurance and that the Atkinsons and Kappler told them the property
was insurable for flood and they could live in the downstairs. The Osbornes also alleged that
the defendants failed to disclose that the ground floor was in violation of NFIP regulations
and that the violation jeopardized their ability to obtain flood insurance. The Osbornes
further alleged that the defendants failed to disclose information that the property was in
violation of a government ordinance affecting the condition or use of the property, in that (1)
the property was in violation of FEMA and NFIP regulations, (2) charges had been brought
in municipal court because of these violations, and (3) a section 1316 notice had been
imposed on the property. The Osbornes alleged that these disclosures were required by the
sales contract. Finally, the Osbornes alleged that the defendants falsely represented that the
property was "grandfathered" because it was built in 1982 and that the Osbornes could do
anything they wanted to with the structure. The Osbornes alleged that they purchased the
house in reliance on these misrepresentations and would not have bought the house if they
had known that the downstairs living area violated federal or municipal regulations or that
there was any problem with flood insurance. 

 A. The Atkinsons' Summary Judgment 

 In their first issue on appeal, the Osbornes contend that the trial court erred in entering
summary judgment in favor of the Atkinsons. The Osbornes assert that the Atkinsons falsely
stated that the house was eligible for flood insurance, did not use reasonable care in obtaining
and communicating information concerning the house's compliance with FEMA regulations,
and failed to disclose material information prior to the sale. The Osbornes also argue that
the evidence shows that the Atkinsons knew their house was in violation of FEMA
regulations. 

 The Atkinsons filed a no-evidence motion for summary judgment in which they
asserted, "Plaintiffs can produce no evidence to support their claims that Atkinsons made any
misrepresentations or failed to provide any information with an intent to mislead the
Osbornes," thus challenging an element of the Osbornes' DTPA cause of action. See Tex.
Bus. & Com. Code Ann. §§ 17.46(b)(5), (24) (Vernon Supp. 2002). They also challenged
three elements of common-law fraud by asserting that there was no evidence of a material
misrepresentation made knowingly or with recklessness as to the truth or falsity of the
statement with the intent that the plaintiffs rely on the statement. See Tex. Capital Sec., Inc.
v. Sandefer, 58 S.W.3d 760, 771 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). 

 The Atkinsons did not specifically challenge any element of the Osbornes' claim for
fraud in a real estate transaction. (4) In addition, they did not specifically make a no-evidence
challenge to any element of negligent misrepresentation, but, rather, asserted that "the
evidence demonstrates diligence" on their part "rather than recklessness." (5) 

 In their response to the Atkinsons' motion, the Osbornes attached, as summary
judgment evidence, the affidavit of Michael Loomis, which stated, in part, "I personally
spoke to Mr. Atkinson on more than one occasion and explained that his home violated the
FEMA and NFIP regulations due to the ground floor living area." Attached to this affidavit
was Loomis's letter to Robert Atkinson stating that the property at 1246 Oahu was in
violation of the Village building code ordinance and/or FEMA codes, and that, if not
corrected, the home could be uninsurable. This is some evidence that the Atkinsons had
knowledge that the house did not comply with FEMA regulations and was not supposed to
be eligible for flood insurance under the NFIP. 

 The Osbornes also attached the affidavit of Ortego stating, "After the conclusion of
the [municipal court] Proceeding, I explained to Mr. Apffel, as Mr. Atkinson's attorney, that
the Atkinson home was not in compliance with FEMA and was still subject to restrictions
relating to flood insurance regardless of the outcome of the Proceeding." Ortego attached
a copy of the letter he sent to Apffel on July 12, 1993 informing Apffel that the section 1316
notice on the Atkinson's house could not be cancelled without an inspection by the Village
to certify that the house complied with FEMA regulations. This is some evidence that the
Atkinsons also had at least constructive knowledge through their attorney that the house did
not comply with FEMA regulations and was not supposed to be eligible for flood insurance. 
See Lehrer v. Zwernemann, 14 S.W.3d 775, 778 (Tex. App.--Houston [1st Dist.] 2000, pet.
denied) (stating that knowledge or notice to attorney during existence of attorney-client
relationship and while acting within scope of authority is imputed to client). 

 Although the evidence in this case establishes that the Atkinsons, at all relevant times,
had flood insurance on their house, there is some evidence that the Atkinsons knew that the
house did not meet FEMA and NFIP regulations and that the failure to meet those regulations
could result in being denied flood insurance on the house. 

 In addition, the Osbornes attached the affidavit of Ansell Osborne, which reads, in
part, "The Atkinsons told us that there were no problems with the flood insurance. In fact,
Ms. Kappler and the Atkinsons told us that the house as it was built was insurable for flood
and that 'you could live in the downstairs.' . . . At no time did the Atkinsons or Ms. Kappler
inform us or discuss that the Atkinsons had been charged with violations of FEMA
regulations and/or municipal ordinances by the Village of Tiki Island officials."

 Osborne's affidavit is some evidence of affirmative misrepresentations by the
Atkinsons that there was no problem with maintaining flood insurance on the property. In
addition, the affidavit is some evidence that the Atkinsons did not disclose the information
regarding the violation of FEMA regulations or the municipal court action in connection with
the building code violations. 

 Osborne's affidavit stating that the Atkinsons' representations and failure to disclose
information were in connection with the purchase of the Atkinsons' house is some evidence
of the Atkinsons' intent to mislead the Osbornes and to have the Osbornes rely on the
representations. Thus, the Osbornes have produced evidence sufficient to raise a genuine
issue of material fact regarding the challenged elements of their causes of action for violation
of the DTPA and common-law fraud. 

 Accordingly, we sustain the Osbornes' first issue. 

 B. Coldwell Banker and Kappler's Summary Judgment

 In their second issue on appeal, the Osbornes contend that the trial court erred in
entering summary judgment in favor of the realtors. The Osbornes argue that their causes
of action are not based on the existence of a section 1316 notice, but on knowing
misrepresentations regarding the insurability of the property against flooding and approval
by the Village of the ground level enclosure and on the failure to disclose violations of
federal regulations and the municipal court action. 

 In their motion for summary judgment on the Osbornes' claims against them, 
Coldwell Banker and Kappler asserted, "There is no evidence whatsoever that Ms. Kappler
or Coldwell Banker ever knew about the Section 1316 Notice on the lot adjoining the house
which the Atkinson's owned." In a supplemental motion, Coldwell Banker and Kappler
contended that the lack of knowledge of a section 1316 notice on the property defeats at least
one element of each of the Osbornes' causes of action--violation of the DTPA, common law
and statutory fraud, and negligent misrepresentation. Thus, the only basis for Coldwell
Banker and Kappler's motion for summary judgment is Kappler's lack of knowledge of the
section 1316 notice. 

 We agree that there is no evidence that Kappler knew that a section 1316 notice had
been filed on the Atkinsons' property--either the vacant lot or 1246 Oahu. However, failure
to disclose a section 1316 notice was not the only allegation made by the Osbornes against
Kappler and Coldwell Banker. The motion for summary judgment did not address the
alleged misrepresentations or alleged failure to disclose material facts other than the section
1316 notice. 

 In response to Coldwell Banker and Kappler's motion, the Osbornes filed the
following relevant summary judgment evidence:

 1. The affidavit of Ansell Osborne, which stated, "Ms. Kappler and the
Atkinsons told us that the house as it was built was insurable for flood and that
'you could live in the downstairs.'" 


 2. Deposition excerpts of Kappler in which she admitted that she knew about the
1992 citations for building code violations and did not tell the Osbornes about
them, but told them there had been a "meeting" with the Village and the
Atkinsons were permitted to have the larger enclosure.


 3. Deposition excerpts of Pearce in which he testified that he had explained the
Tiki Island building code requirements to Kappler in late 1997 or early 1998
when she built a house on Tiki Island. 

 The Osbornes' summary judgment evidence establishes an issue of material fact
regarding whether Kappler made material misrepresentations or failed to disclose facts
material to the Osbornes' purchase of the house. Accordingly, we sustain the Osbornes'
second issue. 

II. The Atkinsons' Claims

 The Atkinsons filed a cross-claim against Coldwell Banker and Kappler and a third-party claim against Omaha Property and the Village. The cross-defendants and third-party
defendants filed motions for summary judgment, which were granted. 

 A. Coldwell Banker and Kappler's Summary Judgment

 In their first issue, the Atkinsons contend that the trial court erred in granting summary
judgment dismissing their claims against Coldwell Banker and Kappler. The Atkinsons
cross-claim against Coldwell Banker and Kappler alleged that they were assisted in the sale
of their house by Kappler, who worked for Coldwell Banker. The Atkinsons asserted that
they were entitled to contribution and/or indemnity from Coldwell Banker and Kappler in the
event that any representations made by cross-defendants resulted in a finding of liability
against the Atkinsons. The Atkinsons also alleged causes of action against Coldwell Banker
and Kappler for breach of contract, breach of fiduciary duty, and negligence. The Atkinsons
did not specify the acts by which Coldwell Banker and Kappler breached their contract or
fiduciary duty. Regarding their negligence claims, the Atkinsons alleged that Coldwell
Banker and Kappler failed to perform with care, skill, reasonable expedience, and
faithfulness the things they agreed to do, but did not specify any particular negligent act.

 Coldwell Banker and Kappler filed a no-evidence motion for summary judgment
asserting that the Atkinsons (1) failed to establish any conduct by the movants that was a
breach of the listing agreement, (2) were unable to articulate any conduct that constituted a
breach of fiduciary duty, and (3) were not critical of Coldwell Banker or Kappler in their
handling of the sales transaction. To be entitled to a no-evidence summary judgment,
Coldwell Banker and Kappler were required to specifically challenge at least one element of
each of the Atkinsons' causes of action to shift the burden to the Atkinsons to produce more
than a scintilla of evidence on the challenged elements. See Tex. R. Civ. P. 166a(i); Macias,
988 S.W.2d at 317. 

 1. Breach of Contract

 The elements of breach of contract are (1) the existence of a valid contract, (2) the
performance or tendered performance by the claimant, (3) a breach of the contract by the
defendant, and (4) damages resulting from that breach. See Southwell v. Univ. of Incarnate
Word, 974 S.W.2d 351, 354-55 (Tex. App.--San Antonio 1998, pet. denied). Coldwell
Banker and Kappler asserted in their motion that there was no evidence of the third
element--a breach of the contract. 

 In their response, the Atkinsons attacked the motion as general, rather than specific
as required by rule 166a(i), and argued that fact issues precluded a summary judgment on the
their claims. They attached, as summary judgment evidence, 56 pages of insurance policies
and related correspondence and 40 pages of excerpts from the depositions of Robert
Atkinson, Denise Atkinson, Kappler, and Caren McLauchlin, another Coldwell Banker
realtor. They did not attach a copy of the listing agreement, and they did not direct the trial
court to any evidence of a breach of the listing agreement or identify any term of the
agreement that was breached by Coldwell Banker or Kappler. Therefore, the Atkinsons did
not carry their burden to produce some evidence that Coldwell Banker or Kappler were in
breach of the listing agreement. 

 2. Breach of Fiduciary Duty

 Regarding the Atkinsons' claim for breach of fiduciary duty, Coldwell Banker and
Kappler asserted that the Atkinsons had not articulated any conduct that would constitute
such a breach. In their response to this motion, the Atkinsons complain that Kappler assisted
them in completing the Sellers' Disclosure form, but did not advise them to provide any
explanation to their responses. However, the Atkinsons did not argue that Kappler had a duty
to give such advice or that she should have given such advice. The Atkinsons do not relate
any of their facts to any fiduciary duty owed to them by Kappler, and they produced no
summary evidence of a breach of such a duty. Moreover, the form itself instructed the seller
to explain any "yes" responses to the questions on the form. We conclude that the Atkinsons
did not carry their burden of producing more than a scintilla of evidence that Coldwell
Banker or Kappler breached a fiduciary duty to them. 

 3. Negligence

 Coldwell Banker and Kappler's motion for summary judgment on the Atkinsons'
negligence cause of action stated, in its entirety, 

 In their depositions, both Cross-Plaintiffs confirmed that they were not
critical of Carol Kappler or Coldwell Banker Realtors, United, for the manner
and method which they handled the transaction made the basis of this
litigation. 


 For further grounds if same need be shown, Movants attach and rely
upon the affidavit of Carol Kappler establishing their entitlement to summary
judgment. 


The motion for summary judgment does not make a no-evidence challenge to any element
of the negligence claim. (6) 

 Accordingly, we sustain the Atkinsons' first issue as it relates to their negligence
claim against Coldwell Banker and Kappler and overrule the issue as it relates to their breach
of contract and breach of fiduciary duty claims against Coldwell Banker and Kappler. 

 B. Omaha Property's Summary Judgment

 In their second issue, the Atkinsons contend that the trial court erred in granting
summary judgment dismissing their claims against Omaha Property. The Atkinsons asserted
a third-party claim against Omaha Property for contribution and indemnity. (7) The Atkinsons
also asserted a negligence action against Omaha Property, contending that Omaha Property
breached its duty (1) to provide flood insurance on the property, (2) to tell the Atkinsons
whether the property was insurable, and (3) to investigate thoroughly whether a section 1316
notice had been filed on the property. In the alternative, the Atkinsons asserted a claim for
negligent misrepresentation, contending that Omaha Property represented that the property
had flood insurance when it did not. 

 In their motion for summary judgment, Omaha Property asserted that they had no duty
to tell the Atkinsons what the Atkinsons already knew--that the house was uninsurable--and 
no duty to investigate to determine whether a section 1316 notice had been filed on the
property. Omaha Property also asserted that there was no evidence that it knew of the section
1316 notice until after the Atkinsons sold the property to the Osbornes. Omaha Property
further asserted that the house was, in fact, insured until the Atkinsons cancelled the
insurance, thus negating the claims that Omaha Property breached its duty to provide
insurance on the house and negligently represented that the house was insured. Regarding
the Atkinsons' claims for contribution or indemnity, Omaha Property asserted that, because
it had no duty to the Atkinsons, there was no basis for an award of contribution or indemnity. 
Omaha Property attached, as summary judgment evidence, copies of the declarations pages
of two flood insurance policies and a notice of cancellation, dated February 19, 1999, stating
that the insurance was cancelled because the house had been sold. 

 In their response to Omaha Property's motion, the Atkinsons argued that fact issues
precluded summary judgment in favor of Omaha Property on the Atkinsons' indemnity and
negligence claims. The Atkinsons attached the affidavit of Denise Atkinson and excerpts
from her deposition and that of Robert Atkinson. However, they did not direct the trial court
to any summary judgment evidence showing a basis for their claims of contribution or
indemnity, nor do they point out any summary judgment evidence to show that Omaha
Property had a duty to tell them their house was uninsurable or to investigate the property to
discover a section 1316 notice. In addition, they did not controvert the evidence establishing
that their house was insured prior to the sale to the Osbornes. 

 Because the Atkinsons did not produce any summary judgment evidence to create a
fact issue regarding whether they had flood insurance or whether Omaha Property owed any
duty to the Atkinsons, we overrule their issue relating to their negligence and negligent
misrepresentation claims against Omaha Property and their claims for contribution and
indemnity. 

 Accordingly, we overrule the Atkinsons' second issue. (8) 

 C. The Village's Summary Judgment

 In their third issue, the Atkinsons contend that the trial court erred in granting
summary judgment dismissing their claims against the Village. The Atkinsons' third-party
claim against the Village contended that the Village violated the equal protection and due
process clauses of the United States Constitution and the Texas Constitution by its selective
and discriminatory enforcement of its building codes and regulations and the FEMA and
NFIP regulations. The Atkinsons also asked for declarations, under the Uniform Declaratory
Judgment Act, that (1) the property at issue does not violate any municipal ordinance of the
City; (2) the City's report to FEMA was not a valid declaration under NFIP; (3) a section
1316 notice was not placed on the residential property at the time it was sold to the Osbornes;
and (4) the dismissal of the City's prior enforcement actions against the Atkinsons are res
judicata or collateral estoppel to the claims by the City that the residential property violates
a municipal ordinance of the City. The Atkinsons alleged that FEMA issues section 1316
notices only after a property is declared by a state or local zoning authority to be in violation
of state or local laws, regulations, or ordinances and that, because the municipal court actions
were resolved in the Atkinsons' favor, the Village improperly declared the Atkinsons'
property to be in violation of the building code. The Atkinsons also asserted a claim against
the Village for contribution and indemnity. 

 The Village filed a motion for summary judgment asserting that the Atkinsons'
constitutional claims were barred by limitations, the declaratory judgment action was
untimely and was improperly pleaded, and the Atkinsons had no right to contribution or
indemnity from the Village. 

 1. Constitutional Claims

 In its motion for summary judgment, the Village asserted that, because the Atkinsons'
claims were more than six years old when they filed suit, under the Texas Constitution, the
Atkinsons' due process claim was barred by the two-year statute of limitations and their
equal-protection claim was barred by the four-year statute. The Village further asserted that
the Atkinsons' federal constitutional claims were likewise barred by the two-year statute of
limitations. 

 The Village attached to its motion, as summary judgment evidence, the letter from
Apffel to FEMA, dated February 17, 1993, in which Apffel stated that, with regard to the
municipal court charges, Atkinson "was found not guilty," and that the Village's notice of
a violation was frivolous and an attempt to harass Atkinson. Apffel requested FEMA's
immediate attention to the matter. The Village also attached Ortego's letter to Apffel dated
July 12, 1993 informing Apffel that a finding of not guilty in the municipal court--a criminal
court--was not determinative of the imposition of section 1316, and the section 1316 notice
could be cancelled after the Village inspected the house and determined that it was in full
compliance with FEMA regulations. As noted above, these letters established that the
Atkinsons had at least constructive knowledge, since 1993, that their house was in violation
of FEMA regulations and the Village had attempted to enforce its building codes and the
FEMA regulations.

 In response to the Village's defense of limitations to the Atkinsons' constitutional
claims, the Atkinsons contend that their constitutional claims did not accrue until they
learned that a section 1316 notice had been filed on their property, rendering it uninsurable. 
This contention does not comport with the claim asserted by the Atkinsons, which was
selective and discriminatory enforcement of the Village's building codes. The Atkinsons
were aware of the attempted enforcement at the time it occurred. Therefore, their cause of
action, if any, accrued, at the latest, in 1993, and their constitutional claims asserted in 2000
were barred by limitations. 

 2. Declaratory Judgment

 a. Standing

 The Village contended in its motion that the Atkinsons had no standing to request a
declaration that the Osbornes' house did not violate a municipal ordinance because the
Atkinsons no longer owned the house and had no justiciable interest in the controversy. The
Atkinsons responded that they had standing to seek a declaration that the property did not
violate any municipal ordinance because they had been sued by the Osbornes as a result of
the erroneous filing of the section 1316 notice on the property. 

 Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction
is essential to a court's power to decide a case. M.D. Anderson Cancer Ctr. v. Novak, 52
S.W.3d 704, 708 (Tex. 2001). Standing requires a real controversy between the parties that
will be determined by the declaration sought. Tex. Workers' Comp. Comm'n v. Garcia, 893
S.W.2d 504, 517-18 (Tex. 1995).

 In this case, there is no justiciable controversy between the Atkinsons and the Village
regarding whether the property at issue violates any municipal ordinance. That controversy,
if it exists, is between the Osbornes and the Village. Accordingly, we hold that the Atkinsons
did not have standing to request a declaration that the property does not violate any municipal
ordinance of the Village. 

 b. Limitations

 The Atkinsons also requested a declaration that the 1992 report to FEMA was invalid. 
The Village asserted in its motion that this request was time barred because the request was
made more than six years after the Atkinsons received notice, through their attorney, of the
report. The Atkinsons respond, without any supporting authority, that they cannot be charged
with constructive knowledge based on the letter to their attorney in light of the
representations of their insurance agent and the insurance policies issued each year. We
disagree. 

 In February 1993, Apffel wrote a letter to FEMA, with a copy to the Atkinsons, about
the Village's report to FEMA. In March, Apffel received a response from FEMA explaining
how to restore insurance coverage. In July 1993, Ortego responded, on behalf of the Village,
to a request by Apffel that the section 1316 notice be cancelled. As with the Atkinsons'
constitutional claims, the Atkinsons had at least constructive knowledge of the Village's
report to FEMA by 1993 at the latest, and any complaint about the validity of that report was
time-barred when they filed their lawsuit in 2000. 

 c. Indispensable Party

 The Village further contended in its motion that, because a section 1316 notice is
administered by FEMA, the Atkinsons' request for a declaration that a section 1316 notice
was not placed on their house prior to the time it was sold to the Osbornes was not properly
raised against the Village. The Village asserted that the cause of action should be dismissed
because FEMA was not joined as an essential party. Whether a section 1316 notice was
placed on the house prior to the sale is irrelevant because it has no effect on the Osbornes'
claims, which are based on allegations of the Atkinsons' misrepresentations and failure to
disclose material facts other than the existence of a section 1316 notice. The requested
declaration would not determine the rights, status, or legal relations between the Atkinsons
and the Village, and it would not resolve any controversy. See Tex. Civ. Prac. & Rem.
Code Ann. § 37.004 (Vernon 1997); Bonham State Bank v. Beadle, 907 S.W.2d 465, 467
(Tex. 1995). 

 d. Res judicata/Collateral Estoppel

 The Village also asserted in their motion that, because the prosecution of the citations
in municipal court against the Atkinsons was a criminal matter, the adjudication did not act
as res judicata or estoppel by judgment in a civil matter. 

 An adjudication of an issue in a criminal matter is not res judicata or estoppel by
judgment to a later civil action involving the same fact issue. State v. Benavidez, 365 S.W.2d
638, 640 (Tex. 1963). One reason for this rule is that, in criminal prosecutions, the state must
prove its case beyond a reasonable doubt, whereas, in civil trials, the burden of proof is
generally a preponderance of the evidence. See id. Thus, if the Atkinsons were acquitted of
the charges in the municipal court citations (they have not directed us to a judgment of
acquittal in this record), the acquittal is no more than a finding that the Village failed to
prove, beyond a reasonable doubt, that they were in violation of the Village building code. 
Therefore, the Atkinsons, as a matter of law, were not entitled to a declaration that the
Village's prior enforcement action against them was res judicata or collateral estoppel to the
Village's claim that the property at issue violates a municipal building code. 

 3. Contribution and Indemnity

 The Village's motion for summary judgment asserted that the Atkinsons were not
entitled to indemnity because there is no common-law indemnity and there is no liability by
the Village to the Osbornes that would create indemnification rights under the DTPA. (9) The
Village also asserted that the Atkinsons had no right of contribution because any claim for
contribution is derivative of the plaintiffs' right to recover from the defendant against whom
contribution is sought. 

 In response to the Village's motion, the Atkinsons argued that indemnity continues
to be a viable claim when a party's liability is purely vicarious or when there is contractual
indemnity. The Atkinsons contended that indemnity may be based on the relationship
between the parties. The Atkinsons argue on appeal that the Village's failure to ensure the
removal of the section 1316 notice after the dismissal of the municipal citations entitles them
to be indemnified by the Village. Thus, their claim for indemnity is based on their
assumption that the section 1316 notice was improperly filed. 

 The Atkinsons have not prevailed on any claim they asserted against the Village. In
addition, they have not established any relationship between themselves and the Village that
would result in the Village's vicarious liability for the Atkinsons' actions. Therefore, there
is no basis for the Atkinsons' claim for contribution or indemnity against the Village. 

 In light of our rulings on each of the Atkinsons' causes of action against the Village,
we overrule the Atkinsons' third issue. 

CONCLUSION


 We reverse the summary judgments against the Osbornes and in favor of the
Atkinsons and Coldwell Banker and Kappler and remand that portion of this cause to the trial
court for further proceedings. 

 We reverse that portion of Coldwell Banker and Kappler's summary judgment
concerning the Atkinsons' claim for negligence and remand that portion of this cause to the
trial court for further proceedings. 

 We affirm all remaining portions of the trial court's judgments. 



 Sam Nuchia

 Justice


Panel consists of Chief Justice Schneider and Justices Hedges and Nuchia. 

Do not publish. Tex. R. App. P. 47. 
1. 42 U.S.C.S. § 4023 (Law. Co-op. 1989). 
2. Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code
Ann. §§ 17.41-.63 (Vernon 1987 & Supp. 2002). 
3. Coldwell Banker and Kappler nonsuited their claims against the Atkinsons, the
Village, Omaha Property, and the Osbornes. The Atkinsons nonsuited their claims against
the Osbornes. 
4. Fraud in a real estate transaction consists of a false representation of a past or existing
material fact, when the false representation is made to a person for the purpose of inducing
that person to enter into a contract and the representation is relied on by that person in
entering into that contract. Tex. Bus. & Com. Code Ann. § 27.01(a)(1) (Vernon 1987). 
5. The elements of negligent misrepresentation are (1) a defendant makes a
representation in the course of his business or in a transaction in which he has a pecuniary
interest; (2) the defendant supplies "false information" for the guidance of others in their
business; (3) the defendant did not exercise reasonable care of competence in obtaining or
communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably
relying on the representation. Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex.
App.--Houston [14th Dist.] 1999, pet. denied). 
6. Coldwell Banker and Kappler's motion does not address the Atkinsons' claim for
contribution and indemnity. However, on appeal, the Atkinsons do not complain of this
omission, and the trial court's final judgment dismisses all unadjudicated claims.
7. The Atkinsons made these same claims against their insurance agent, Rust, Ewing,
Watt & Haney, Inc. The trial court granted Rust Ewing's motion for summary judgment, and
the Atkinsons have not appealed that judgment. 
8. Omaha Property's motion for summary judgment included a request for a "traditional"
summary judgment based on limitations, contending that the one-year statute of limitations
under the federal act had expired and the Texas two-year statute of limitations for claims of
negligence and negligent misrepresentations had expired because the Atkinsons knew about
the non-compliance with the FEMA and NFIP regulations in 1992, but did not file their claim
until October 2000. In light of our ruling on Omaha Property's no-evidence motion, we need
not reach this issue. 
9. See Tex. Bus. & Com. Code Ann. § 17.555 (Vernon 1987).