Opinion issued October 23, 2003










     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00437-CV




THOMAS RETZLAFF, Appellant

V.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellee




On Appeal from the County Court at Law No. 2 
and Probate Court of Brazoria County, Texas
Trial Court Cause No. 28,404S




O P I N I O N
          Thomas Retzlaff, appellant, an inmate in the custody of Texas Department of
Criminal Justice–Institutional Division (TDCJ), appellee, sued TDCJ for personal
injuries, conversion, unlawful takings, civil rights violations under 42 U.S.C. section
1983, breach of fiduciary duty, theft by a public servant, negligence, and gross
negligence. Appellant also named Mack DeSha, Jr. and John and/or Jane Doe,
Unknown Defendant(s), as co-defendants, asserting similar claims. The trial court
granted summary judgment for TDCJ and severed the other defendants, making the
judgment final. In four points of error, appellant asserts that the trial court erred in
(1) granting summary judgment on all appellant’s claims; (2) granting more summary
judgment relief than was requested; (3) failing to rule on appellant’s summary
judgment objections; and (4) denying appellant’s motion to continue the summary
judgment hearing.
          We affirm.
FACTS AND PROCEDURAL HISTORY
          Appellant is an inmate in the custody of TDCJ. On July 20, 2001, appellant
sued TDCJ for damages arising from two unrelated occurrences. 
A.      The Rec Yard Incident
          On July 17, 1999, appellant was injured while playing “ragball” in TDCJ’s
prison recreation yard (“rec yard”). While engaged in this prison derivative of
baseball, appellant ran and fell into a section of the prison’s perimeter security fence
that was constructed of razor wire. TDCJ had intentionally installed razor wire on the 
 
portion of the fence into which appellant fell, because that portion had been identified 
as a potential area of escape. The razor wire was used to enhance security by adding
an additional deterrent. 
          Generally, inmates were given verbal and written warnings that they were
proscribed from coming into contact with the perimeter fence. However, appellant
was not specifically warned about the presence of razor wire at the location where he
incurred the injuries. Relatedly, TDCJ did not post a barrier or sign warning inmates
that the perimeter fence was constructed of razor wire at that location.
B.      The Missing Money 
          Appellant claims that a series of unauthorized withdrawals totaling
approximately $700 were made from his inmate account between April 1998 and May
31, 2001. Appellant asserts that these withdrawals were made by Mack DeSha, Jr.
or John and/or Jane Doe, Unknown Defendants, employees of TDCJ. 
          Appellant concedes that withdrawals were regularly made from his account in
repayment of indigent supplies received by appellant from the prison library.
Appellant further acknowledges that he received indigent supplies and that TDCJ had
the right to debit his inmate account for such supplies. However, appellant asserts
that the amounts withdrawn from his account were disproportionate to the value of
the supplies received. Therefore, appellant claims that TDCJ, through either Mack
DeSha, Jr. or another, unknown employee, either stole or lost funds from the account. 
C.      The Summary Judgment Proceedings
          On August 15, 2001, TDCJ requested summary judgment by filing a pleading
designated “Defendant Texas Department of Criminal Justice’s Motion for Summary
Judgment, Objections to Plaintiff’s Discovery, and Motion for Protective Order”
(hereinafter “original MSJ”). In its original MSJ, TDCJ asserted that all appellant’s
claims were barred by the applicable statutes of limitations. Later, on August 29,
2001, TDCJ filed a pleading designated “Defendant Texas Department of Criminal
Justice’s Supplement to It’s Motion for Summary Judgment” (hereinafter “first
supplemental MSJ”), which added sovereign immunity as a ground for summary
judgment. 
          On September 21, 2001, the trial court held a pre-trial hearing at which it
intended to hear arguments concerning, inter alia, TDCJ’s request for summary
judgment. Prior to appearing for the hearing, TDCJ was under the mistaken belief
that appellant had filed suit as an indigent. Therefore, before TDCJ’s motion for
summary judgment was addressed, TDCJ asked the court to postpone the hearing to
give TDCJ additional time to “submit [its] motion one more time and address the
facts as they are now as opposed to what [it] perceived them to be.” The court
granted TDCJ 14 days to resubmit its motion. The court also gave appellant an
additional 14 days to respond. The court then stated that it would decide the matter
on submission.
 
          On October 10, 2001, TDCJ filed a pleading designated “Defendant Texas
Department of Criminal Justice’s Second Supplement to Its Motion for Summary
Judgment” (hereinafter “second supplemental MSJ”). TDCJ’s second supplemental
MSJ was, in fact, a completely rewritten pleading that reasserted TDCJ’s prior
defenses and added as grounds the assertion that TDCJ owed no duty to appellant in
relation to his tort claims, and that the trial court lacked jurisdiction over appellant’s
section 1983 claim. Appellant filed his response to TDCJ’s second supplemental
MSJ on October 23, 2001. In appellant’s response, he made a number of objections
concerning TDCJ’s second supplemental MSJ; however, he never excepted to the title
used for that pleading. The trial court did not rule on any of the objections in
appellant’s response, and appellant failed to obtain a refusal to rule from the court.
          On December 7, 2001, the trial court held a proceeding wherein it anticipated
entering summary judgment for TDCJ. Appellant appeared at this proceeding and
again made a number of objections concerning TDCJ’s second supplemental MSJ. 
Again, appellant failed to except to the title used for TDCJ’s second supplemental
MSJ; and again, he failed to obtain a ruling on his objections. However, the trial
court did take additional time to consider appellant’s objections before entering
judgment. In entering judgment, the trial court stated that it considered, “the
argument and pleadings of the parties filed herein.” 
 
          On January 2, 2002, without stating the grounds upon which it reached its
decision, the trial court granted summary judgment in favor of TDCJ on all
appellant’s claims.
PROPER SCOPE OF SUMMARY JUDGMENT
          In his second point of error, appellant claims that the trial court committed
error in granting summary judgment for TDCJ on those claims not addressed in
TDCJ’s original MSJ. Appellant’s argument is as follows: “the trial court’s summary
judgment order specifically stated that it was only granting appellee’s original motion
for summary judgment–not appellee’s original and supplemental motions for
summary judgment!!” (emphasis in original). We interpret this argument to mean
that, because the trial court’s judgment only referred to TDCJ’s original MSJ, it did
not consider either of TDCJ’s “supplemental” motions for summary judgment. We
also take this argument to mean that the trial court’s failure to consider TDCJ’s
“supplemental” motions limited the possible grounds upon which summary judgment
could be based to those expressly presented in the motion considered by the court
(i.e., TDCJ’s original MSJ). Thus, according to appellant’s argument, the scope of
the summary judgment is limited to the personal injury and conversion claims
addressed in TDCJ’s original MSJ. 
          We disagree with appellant’s reasoning. 
 
A.      The Mistitled Pleading
          A supplemental pleading may only be used to respond to the last preceding
pleading filed by another party; it may not be used to amend one’s own pleading.


 
Tex. R. Civ. P. 69. Consequently, a supplemental pleading is not an appropriate
method of stating a new cause of action or an additional affirmative defense. See
Wegener v. Erdman, 154 S.W.2d 969, 970 (Tex. Civ. App.—Fort Worth 1941, no
writ). The appropriate method by which to add a cause of action or affirmative
defense is to amend the deficient pleading. Tex. R. Civ. P. 62. 
          Relatedly, when justice requires, the court must treat an improperly designated
pleading as if it had been properly designated. Tex. R. Civ. P. 71. Therefore, when
a party seeks to amend its pleading but mistakenly designates the new pleading a
supplemental pleading, the mistitled pleading will be considered an amendment to the
original pleading. Id.; Glenn v. Dallas County Bois D’Arc Island Levee Dist., 268
S.W. 452, 453 (Tex. 1925); Hawkins v. Anderson, 672 S.W.2d 293, 295 (Tex.
App.–Dallas 1984, no writ). Further, any objection to a mistitled or otherwise
defective pleading must be made in writing before the judgment is signed or the
objection is deemed waived. Tex. R. Civ. P. 90.
          In the instant case, it is obvious from TDCJ’s second supplemental MSJ that
TDCJ meant, by that pleading, to amend its original MSJ. TDCJ’s original MSJ
merely asserted that appellant’s claims were barred by the applicable statutes of
limitations; the second supplemental MSJ was an entirely rewritten pleading that
restated the statute of limitations defense while asserting additional defenses and
jurisdictional claims. 
          Because TDCJ merely mistitled its second supplemental MSJ and because
appellant did not except to the misnomer, it is proper to consider TDCJ’s second
supplemental MSJ as an amendment to its original MSJ. 
B.      The Effect of the Mistitled Pleading
          When a party files an entirely rewritten pleading in amendment of a prior
pleading, the latter pleading supersedes the original, making the original a nullity
unless the latter pleading is for some reason stricken. Tex. R. Civ. P. 65. Thus, an
amended motion for summary judgment completely supersedes an original motion for
summary judgment and becomes the controlling petition. Elliot v. Methodist Hosp.,
54 S.W.3d 789, 793 (Tex. App.—Houston [1st Dist.] 2001, no pet.).
          TDCJ filed its second supplemental MSJ on October 10, 2001. The judgment
was signed and rendered on January 2, 2002. The court, therefore, had the mislabeled
pleading on file and available for its consideration prior to rendering its judgment. 
The judgment indicates that the court considered “the argument and pleadings of the
parties filed herein.” We take this statement to mean that the court considered all
pleadings filed prior to the date of the judgment, including TDCJ’s second
supplemental MSJ. 
          The only proper consideration of TDCJ’s second supplemental MSJ was as an
amended motion for summary judgment. As an amended pleading, TDCJ’s second
supplemental MSJ superseded all prior motions for summary judgment. 
Consequently, it was the controlling motion upon which summary judgment was
granted. 
C.      The Proper Scope of Summary Judgment
          The trial court was, indeed, limited to the grounds expressly presented in the
motion before it. See McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341
(Tex. 1993). However, TDCJ’s second supplemental MSJ was the controlling motion
before the court. Regardless of what pleading the trial court referred to in the
judgment, it is clear that this motion was the one upon which summary judgment was
granted. Because TDCJ’s second supplemental MSJ asserted grounds for and
requested summary judgment of all appellant’s claims, we hold that the trial court’s
judgment did not grant more relief than was requested by TDCJ.
          Appellant’s second point of error is overruled.
 
 
PROPRIETY OF SUMMARY JUDGMENT
          In his first point of error, appellant asserts that the trial court erred in granting
summary judgment because TDCJ failed to meet its summary judgment burden as to
any of appellant’s claims. 
A.      Standard of Review 
          A traditional summary judgment under Rule 166a(c) is proper only when the
movant establishes that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Randall’s Food Mkts., Inc.
v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). As movant, the defendant is entitled
to summary judgment if the evidence disproves, as a matter of law, at least one
element of each of the plaintiff’s causes of action or conclusively establishes each
element of an affirmative defense. Friendswood Dev. Co. v. McDade + Co., 926
S.W.2d 280, 282 (Tex. 1996). In reviewing a summary judgment, we indulge every
reasonable inference in favor of the non-movant and resolve any doubts in his favor. 
Johnson, 891 S.W.2d at 644; Lawson v. B Four Corp., 888 S.W.2d 31, 33 (Tex.
App.–Houston [1st Dist.] 1994, writ denied). We also take all evidence favorable to
the non-movant as true. Johnson, 891 S.W.2d at 644; Lawson, 888 S.W.2d at 33. 
           When there are multiple grounds for summary judgment and the trial court
does not state the ground or grounds on which it based its ruling, an appellant must
negate each ground on which summary judgment may have been rendered. State
Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 381 (Tex. 1993). Otherwise, this
Court must uphold the summary judgment. Id.
B.      Summary Judgment on the Rec Yard Claims
          Appellant’s personal injuries occurred when he ran and fell into razor wire that
was intentionally placed along a perimeter security fence to dissuade inmates from
attempting an escape through that portion of the fence. Appellant claims that the
presence of the razor wire constituted either a premise defect or a special defect for
which TDCJ is liable in tort. Appellant also claims that TDCJ was negligent or
grossly negligent in (1) constructing the portion of the fence, into which he fell, out
of razor wire, and (2) failing to properly warn him of the presence of the razor wire. 
To invoke the trial court’s jurisdiction, appellant brought these claims under the
Texas Tort Claims Act (“TTCA”). Tex. Civ. Prac. & Rem. Code Ann. § 101.021
(Vernon 1997). In response to appellant’s claims, TDCJ asserted that it was immune
to suit because appellant’s claims did not fall under the TTCA. TDCJ also asserted
that, even if appellants claims did fall under the TTCA, TDCJ owed no duty to
appellant in relation to his negligence claims.
          1.       Sovereign Immunity
          The State of Texas, its agencies, and officers are immune from suit unless the
State, through its legislature, consents to being sued. Texas Nat’l Res. Conservation
Comm’n v. IT-Davy, 74 S.W.3d 849, 853-54 (Tex. 2002). The burden is on the
plaintiff to show consent either by reference to a statute or to express legislative
permission. Texas Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). In the
absence of such consent, the courts lack jurisdiction. Id. Accordingly, the proper
vehicle by which the State should seek summary disposition of a claim for which
consent has not been given is by a plea to the jurisdiction. Id. However, this Court
has accepted immunity claims submitted as affirmative defenses in motions for
summary judgment. Cobb v. Tex. Dep’t of Crim. Justice, 965 S.W.2d 59, 61 (Tex.
App.—Houston [1st Dist.] 1998, no pet.).
          Because appellant did not bring the current suit under an express grant of
legislative permission, this Court must determine whether his claims fall within a
statutory waiver of sovereign immunity. Jones, 8 S.W.3d at 638. In Texas, sovereign
immunity has been waived by the TTCA in certain limited circumstances. Tex. Civ.
Prac. & Rem. Code Ann. § 101.021. 
          The TTCA states as follows:
A governmental unit in the state is liable for:
 
(1) property damage, personal injury, and death proximately
caused by the wrongful act or omission or the negligence of an
employee acting within his scope of employment if:
(A) the property damage, personal injury, or death arises
from the operation or use of a motor-driven vehicle or motor-driven
equipment; and
(B) the employee would be personally liable to the claimant
according to Texas law; and

 
(2) personal injury and death so caused by a condition or use of
tangible personal or real property if the governmental unit would, were
it a private person, be liable to the claimant according to Texas law.

Id. Since appellant does not assert that his personal injuries were caused by the use
of a motor-driven vehicle or motor-driven equipment, he must show that his claims
fall under the second subsection of the TTCA.
                    a.       Appellant’s Premise/Special Defect Theories
          The TTCA waives the State’s sovereign immunity for injuries caused by a
condition of real property if the governmental unit would, were it a private person,
be liable under Texas law. Tex. Civ. Prac. & Rem. Code Ann. §101.021(2); City
of Grapevine v. Roberts, 946 S.W.2d 841, 843 (Tex. 1997); Cobb, 965 S.W.2d at 62. 
Under the TTCA, the State’s standard of care is dependent on whether the claim
arises from an ordinary “premise defect” or a “special defect.” Tex. Civ. Prac. &
Rem. Code Ann. §101.022 (Vernon 1997); Roberts, 946 S.W.2d at 843.
          Because appellant asserted that the razor wire constituted both an ordinary
premise defect and a special defect, we must address both.
                              i)       ordinary premise defect
          If an ordinary premise defect causes an injury, the governmental entity owes
the claimant the same duty that a private landowner owes a licensee. Tex. Civ. Prac.
& Rem. Code Ann. §101.022; Roberts, 946 S.W.2d at 843. This duty entails a
responsibility not to injure the licensee through willful, wanton, or grossly negligent
conduct. State Dep’t of Highways v. Payne, 838 S.W.2d 235, 237 (Tex. 1992). It
also entails a responsibility to either warn the licensee or to make the condition
reasonably safe if the landowner has knowledge of a dangerous condition and the
licensee does not. Id. 
          “Premise defect” is not defined by the TTCA. Therefore, to determine if a
condition falls under the definition of premise defect, we look to the ordinary
meaning of the words. Cobb, 965 S.W.2d at 62. We define “premises” as “a
building, its parts, grounds, and appurtenances.” Id. We define “defect” as “an
imperfection, shortcoming, or ‘want of something necessary for completion.’” Id.
(quoting Billstrom v. Mem’l Med. Ctr., 598 S.W.2d 642, 646 (Tex. App.—Corpus
Christi 1980, no writ)).  
          Although the razor wire was certainly on TDCJ’s premises, it did not constitute
an imperfection or shortcoming; nor did it lack something necessary for completion. 
The portion of the perimeter fence into which appellant fell was complete. The razor
wire was intentionally incorporated into the construction of the fence as a deterrent. 
Its purpose was to harm any inmate who attempted to enter the restricted area where
it was placed. Appellant’s injuries are indicative of its effectiveness. We find that
the razor wire that injured appellant was not a premise defect.
 
 
                              ii)      special defect
          If an injury causing condition is a special defect, the governmental entity owes
the claimant the same duty that a private landowner owes an invitee. Roberts, 946
S.W.2d at 843. This duty imposes the responsibility to use ordinary care to reduce
or eliminate an unreasonable risk of harm created by a condition of the premises of
which the owner is or reasonably should be aware. Id.
          “Special defect” is defined by the TTCA as an excavation or obstruction on
highways, roads, or streets or the absence, condition, or malfunction of traffic signs,
signals, or warning devices. Tex. Civ. Prac. & Rem. Code Ann. § 101.022. The
examples given in the TTCA, however, are not exclusive. Roberts, 946 S.W.2d at
843. “Courts are to construe ‘special defects’ to include defects of the same kind or
class as the ones expressly mentioned in the statute.” Id.
          Razor wire used on the perimeter fencing of a prison is not expressly
mentioned in the above definition of special defect. Nor is it a defect of the same
kind or class as the ones expressly mentioned in the statute. We find that the razor
wire that injured appellant was not a special defect. 
          We hold that the TTCA did not waive sovereign immunity for appellant’s
premises-defect claims.
 
 
                    b.       Appellant’s Negligence Theory
          The TTCA waives the State’s sovereign immunity for injuries caused by the
use of tangible personal property if the governmental unit would, were it a private
person, be liable under Texas law. Tex. Civ. Prac. & Rem. Code Ann. §
101.021(2). However, the use of tangible personal property must do more than
merely furnish the condition that made the injury possible; it must be a direct factor
in the injuries sustained. Dallas County Mental Health and Mental Retardation v.
Bossley, 968 S.W.2d 339, 343 (Tex. 1998). 
          We have limited the phrase “tangible personal property” to include only
property that is corporeal, concrete, and has a palpable existence. Sawyer v. Texas
Dep’t of Criminal Justice, 983 S.W.2d 310, 312 (Tex. App.—Houston [1st Dist.]
1998, pet. denied). Similarly, for the purposes of the TTCA, the word “use” means
to “put or bring the property into action or service; to employ for or apply to a given
purpose.” City of Hidalgo Ambulance Serv. v. Lira, 17 S.W.3d 300, 304-05 (Tex.
App.—Corpus Christi 2000, no pet.). 
          The razor wire was tangible property in that it was corporeal, concrete, and had
a palpable existence. Moreover, TDCJ put the razor wire into service for a given
purpose by placing the wire along the perimeter fence to deter inmates from escaping. 
This use of the razor wire did more than merely furnish the condition that made
appellant’s injury possible; it was a direct factor in appellant’s injuries. 
          We believe that injuries proximately caused by a negligent placing of razor
wire in locations where a person might accidently come into contact with it are also
proximately caused by a use of tangible property under circumstances where a private 
person would be liable. Therefore, we hold that the TTCA waives sovereign
immunity for appellant’s negligence claims. 
          2.       TDCJ’s Duty to Appellant
          Having determined that the TTCA waives sovereign immunity for appellant’s
negligence claims, we must next address TDCJ’s assertion that it owed no duty to
place the razor wire in a less accessible location or to place warnings or barriers
between the rec yard and the razor wire.
          In a negligence action, a plaintiff must show (1) a duty owed by the defendant
to the plaintiff, (2) a breach of that duty, and (3) that such breach proximately caused
the plaintiff’s injuries. El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987). 
Of these, the existence of a duty is a threshold consideration. Greater Houston
Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). The existence of a duty
is a question of law for the court to decide from the circumstances surrounding the
occurrence. Id. In determining whether a defendant owes a duty, the court must
consider a number of competing individual and social interests. Otis Eng’g Corp. v.
Clark, 668 S.W.2d 307, 309 (Tex. 1983). “Although the formulation and emphasis
varies with the facts of each case, three categories of factors have emerged: (1) the
relationship between the parties; (2) the reasonable foreseeability of harm to the
person injured; and (3) public policy considerations.” Id. Of these factors,
foreseeability of the risk is the dominant consideration. Poole, 732 S.W.2d at 311.
          In the instant case, when considering these factors, we remain cognizant that
this case involves an inmate and a prison. See Jones v. North Carolina Prisoners’
Labor Union, Inc., 433 U.S. 119, 125-26, 97 S. Ct. 2532, 2537-38 (1977). We must
defer to prison administrators’ decisions and recognize the peculiar and restrictive
circumstances of penal confinement. See id. The complex and often difficult realities
associated with the operation of a penal institution require this deference. Id. 433
U.S. at 126, 97 S. Ct. at 2538.
          Appellant asserts that Government Code, section 494.001 imposes a duty on
TDCJ to make its perimeter security fence safe to its inmates. See Tex. Gov’t Code
Ann. 494.001 (Vernon 1998). We disagree. 
          The fundamental purpose of a prison is to isolate its inhabitants from society
and insure that they remain isolated until they are eligible for release. Because we
cannot always depend on prisoners to acquiesce to their confinement, those who
design and operate prisons find it necessary to construct barriers and deterrents in an
effort to enforce such confinement. To be effective, these barriers and deterrents
must sometimes create peril or harm to those who come into contact with them. 
 
          We are not willing to impose a duty on prison officials to make safe those
barriers and deterrents whose very purpose require them to be dangerous. Likewise,
we will not impose a duty on prison officials to warn inmates of every possible hazard
which these barriers and deterrents might create. It is enough that TDCJ and other
prison operators warn inmates of those areas of the prison from which inmates are
prohibited and to identify the consequences of failing to heed these warnings. It then
becomes the duty of the individual inmates to follow the rules of the prison and the
dictates of common sense by avoiding contact with those security measures which
might cause physical pain and injury. 
          In the instant case, although it was foreseeable an inmate could injure himself
on the razor wire, we find that the social utility of having the razor wire in the
location in question greatly outweighed the risk of injury to the inmates. We also find
that whatever risk the razor wire presented was mitigated by the general prohibition
against coming into contact with the perimeter security fence. Further, it would be
imposing too great a burden on TDCJ to require it to place additional barriers around
all those barriers which might cause physical injury to an inmate. The utility of such
a measure would be greatly outweighed by its costs. 
          We hold that TDCJ did not owe a duty to (1) place the razor wire at a less
accessible location, (2) specifically warn appellant of the presence of the razor wire,
or (3) erect barriers around the razor wire. 
          Because the TTCA does not apply to appellant’s premises defect claims and
because TDCJ owed no duty to appellant with regard to his negligence claim, we
affirm summary judgment concerning appellant’s rec yard claims.
C.      Summary Judgment on The Missing Money Claims               
          Appellant brings several claims against TDCJ in relation to the $700, which is
allegedly missing from his inmate trust account. Appellant asserts that this money
was lost or stolen by either Mack DeShay, Jr. or another, unknown employee of
TDCJ. Three of appellant’s claims concerning this missing money—the conversion
claim, negligence claim, and breach of fiduciary duty claim—were brought in tort
under the TTCA. Appellant also made a civil rights claim against TDCJ under 42
U.S.C. section 1983. Relatedly, appellant brought an unlawful takings claim. 
Finally, appellant attempted to bring a claim against TDCJ for theft by a public
servant. TDCJ asserted that sovereign immunity was not waived for appellant’s tort
claims because they did not fall under the TTCA. TDCJ also asserted that its actions
were not governed by section 1983. Appellant’s claims will be addressed in the
above order.
          1.       The Tort Claims
          Appellant attempted to invoke the trial court’s jurisdiction by bringing his tort
claims under the TTCA. This attempt was mistaken. The portion of the TTCA
relevant to appellant’s claims provides as follows:
A governmental unit in the state shall be liable for:
 
(1) property damage, personal injury, and death proximately
caused by the wrongful act or omission or the negligence of an
employee acting with his scope of his employment if:
(A) the property damage, personal injury, or death
arises from the operation or use of a motor-driven vehicle and motor-driven equipment, and
(B) the employee would be personally liable to the
claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (emphasis added). 
          The TTCA, as it is interpreted by this Court, does not provide for recovery of
property damage or loss except in those instances in which such loss results from the
operation and use of a motor-driven vehicle or motor-driven equipment. Wheat v.
Tex. Dep’t of Corr., 715 S.W.2d 362, 363 (Tex. App.—Houston [1st Dist.] 1986, writ
ref’d n.r.e.). Appellant has not and cannot allege that his loss is the result of the
operation or use of a motor-vehicle or motor-equipment.
          We hold that the TTCA does not waive sovereign immunity for appellant’s tort
claims.
          2.       The 42 U.S.C. Section 1983 Claim
          Appellant sued TDCJ under 42 U.S.C. section 1983 claiming that TDCJ
deprived him of his property rights to the money missing from his inmate trust fund
account. Section 1983 provides, in pertinent part, as follows:
Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of the United States or
other person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in action at law, suit in equity, or other
proper proceeding for redress.

42 U.S.C. § 1983 (1994). Initially, to determine whether a person or entity’s actions
are governed by section 1983, we use a two prong test. Parratt v. Taylor, 451 U.S.
527, 535, 101 S. Ct. 1908, 1913 (1981), overruled on other grounds, Daniels v.
Williams, 474 U.S. 327, 330-31, 106 S. Ct. 662, 664-65 (1986); Denson v. T.D.C.J.-I.D., 63 S.W.3d 454, 461 (Tex. App.—Tyler 1999, pet. denied). First we determine
if the conduct complained of was committed by a person acting under color of state
law. Id. Second, we determine whether this conduct deprived a person of rights,
privileges or immunities secured by the United States Constitution or the laws of the
United States. Id. 
          Assuming, as we must, that TDCJ, through one of its employees, did
intentionally or inadvertently steal or otherwise misplace the $700 complained of,
such actions would, indeed, be under the color of state law. However, appellant fails
to otherwise satisfy the first prong of the test, because TDCJ is not a “person” who
can be sued under section 1983. Denson, 63 S.W.3d at 461. 
          We hold that appellant failed to state a legally cognizable claim under 42
U.S.C. section 1983.
 
 
          3.       The Unlawful Takings Claim
          Appellant brought a claim asserting that the theft or loss of the money in his
inmate account constituted an illegal taking under the Fifth and Fourteenth
Amendments to the United States Constitution, as well as Article I, sections 17 and
19 of the Texas Constitution. 
          Whether specific acts constitute a taking is a question of law. Gen. Servs.
Comm’n v. Little-Tex Insulation Co., Inc., 39 S.W.3d 591, 598 (Tex. 2001). To
establish a takings claim, one must “prove (1) the State intentionally performed
certain acts, (2) that resulted in a ‘taking’ of property, (3) for public use.” Id. We
have interpreted the “for public use” prong of this test to require evidence that
independently shows the governmental entity intended to accomplish an eminent
domain objective under the guise of police power. Woodson Lumber Co. v. City of
College Station, 752 S.W.2d 744, 747 (Tex. App.—Houston [1st Dist.] 1988, no
writ). Consequently, in order to state a takings claim, appellant must allege that
TDCJ was attempting to benefit the public at large through the State’s power of
eminent domain. See id.
          Appellant claimed that the money in his inmate account had been stolen or lost
by Mack DeSha, Jr. or another, unknown employee of TDCJ. He makes no claim and
there is nothing in the record to indicate that TDCJ was attempting to obtain a benefit 
 
for the public at large. Nor is there any evidence to suggest that the alleged actions
of TDCJ were accomplished by eminent domain. 
          We hold that appellant failed to state a legally cognizable illegal takings claim
under either the United States Constitution or the Texas Constitution. 
          4.       The “Theft by a Public Servant” Claim
          Appellant brought a claim alleging that TDCJ is “guilty of theft by a public
servant for the theft of plaintiff’s indigent supplies or trust fund monies, in violation
of Texas Penal Code, section 31.03(f).” Although the cited section of the Penal Code
does provide that public servants are subject to criminal penalty for theft or
misappropriation of property if such theft or misappropriation was accomplished by
virtue of their status as public servants, appellant lacks standing to bring a criminal
action against TDCJ. To obtain relief under this statute, appellant must file charges
against TDCJ with the appropriate district attorney’s office.
          We hold that appellant lacked standing to sue TDCJ for theft by a public
servant under the Texas Penal Code.
D.      Propriety of Summary Judgment
          Because TDCJ sufficiently met its summary judgment burden with regard to
each of appellant’s claims, the trial court did not err in granting summary judgment
for the entire suit.
          Appellant’s first point of error is overruled.  
APPELLANT’S SUMMARY JUDGMENT OBJECTIONS
          Appellant’s third point of error asserts that the trial court erred in not giving
written rulings on the numerous objections made by appellant concerning TDCJ’s 
motion for summary judgment. Appellant asserts that the court’s failure to rule on
these objections harmed him in that he was unable to properly preserve error.
          It is incumbent on a party making an objection to obtain a ruling or a refusal
to rule on that objection in order to preserve error. Tex. R. App. Proc. 33.1(a). 
When a party does not obtain a ruling on an objection and fails to request a refusal
to rule or otherwise object to the court’s refusal, he may not later complain about the
lack of any such ruling. See id.
          In the instant case, it was appellant’s responsibility to obtain a ruling on his
objections by the trial court. If the trial court was unwilling to rule on the objections,
appellant should have asked the court for a refusal to rule and then objected to that
refusal. He never asked for such a refusal. He may not now complain that error was
not preserved due to the court’s failure to rule on the objection.
          Appellant’s third point of error is overruled.
SUMMARY JUDGMENT HEARING AND NOTICE
          In his fourth point of error, appellant asserts that the trial court erred in not
granting his numerous motions for continuance of the “summary judgment hearing.” 
Appellant also asserts that the court erred in postponing the summary judgment
hearing and granting TDCJ’s request for leave to re-submit its motion for summary
judgment.
A.      Continuance of Summary Judgment Hearing
          We review the denial of a motion for continuance under an abuse of discretion
standard. State v. Wood Oil Dist., Inc., 751 S.W.2d 863, 865 (Tex. 1988). We will
not disturb the trial court’s ruling on a motion for continuance absent a clear abuse
of discretion. Id. 
          It was purely within the trial judge’s discretion as to whether to hold an oral
hearing on TDCJ’s motion for summary judgment. See Gordon v. Ward, 822 S.W.2d
90, 92 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Ultimately, the trial court
rendered summary judgment on the basis of the pleadings and did not hear oral
argument. Therefore, appellant’s assertion that the court abused its discretion in not
granting his motion to continue the summary judgment hearing is moot. There was
no summary judgment hearing. The court rendered judgment solely on the basis of
the pleadings and summary judgment evidence. 
          We hold that the trial court did not abuse its discretion in denying appellant’s
motions for continuance of the summary judgment hearing.
B.      Timeliness of Summary Judgment Pleadings
          Appellant contends that the trial court erred in allowing TDCJ to submit its
second supplemental MSJ, because appellant was not given sufficient notice and time
to respond. Specifically, appellant asserts that the trial court was required to give him 
at least 21 days notice to respond to the motion pursuant to Texas Rule of Civil
Procedure 166a(c). 
          Rule 166a(c) provides, in pertinent part, as follows:
Except on leave of court, with notice to opposing counsel, the motion
and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. 

Tex. R. Civ. Proc. 166a(c). Rule 166a(c) also provides that: 
 
Except on leave of court, the adverse party, not later than seven days
prior to the day of hearing may file and serve opposing affidavits or
other written response.

Id.
          A party can amend its pleadings at any time; however, the trial court must grant
leave to file an amended pleading within seven days of the date of trial. Tex. R. Civ.
P. 63. For the purposes of Rule 63, a summary judgment hearing or submission date
is a “trial.” See Goswami v. Metro. Sav. & Loan Ass’n, 751 S.W.2d 487, 490 (Tex.
1988). A liberal interpretation has been given to Rule 63. Id. Therefore, if the
record does not reflect that the trial court denied leave to amend a pleading, we
presume that the court considered the amended pleading when it rendered judgment. 
Honea v. Morgan Drive Away, Inc., 997 S.W.2d 705, 707 (Tex. App.—Eastland
1999, no pet.) (citing Goswami, 751 S.W.2d at 490).
 
          In the instant case, no hearing was held on the motion for summary judgment. 
The submission date was set at the September, pre-trial hearing at which both
appellant and TDCJ were present and participated. At the September, pre-trial
hearing, the trial court specifically gave TDCJ 14 days in which to submit its final
amended motion for summary judgment. It then gave appellant an additional 14 days
to respond. The submission date was, therefore, set for 28 days after the September
21, 2001 hearing. This gave appellant more than the required 21 days notice. See
Tex. R. Civ. P. 166a(c). 
          Although TDCJ filed its second supplemental motion after the 14 days allowed
by the trial court, it was within the trial court’s discretion to accept and consider the
motion. The record does not indicate that the trial court denied TDCJ leave to file the
motion late. Indeed, the trial court’s judgment indicates that the court considered “the
argument and pleadings of the parties filed herein.” We take this to mean that the
trial court accepted and considered the late-filed pleading as well. See Honea, 997
S.W.2d at 707 (holding that trial court denied party leave to file late pleading when
judgment stated that court considered, “the pleadings and summary judgment
evidence timely filed”)(emphasis added). Further, appellant was not harmed because
the court allowed him 14 days from the date that TDCJ filed its new motion to
respond. The 14 days the court allowed appellant to respond was all that Rule
166a(c) required. 
          We overrule appellant’s fourth point of error.
CONCLUSION
          We have overruled all grounds alleged by appellant for reversing the summary
judgment. Accordingly, we affirm the judgment of the trial court. 
 
 
                                                             Laura C. Higley
                                                             Justice
 
Panel consists of Justices Hedges, Nuchia, and Higley.