**Karla LAWSON, Individually and as Representative of the Estate of Randol Lawson, Deceased, and as Next Friend of Erin Lawson, Brittany Lawson and Kristen Lawson, the Surviving Children of Randol Lawson, Deceased, and Bobby Lawson, Individually and Belva Lawson, Individually and as Parents of Randol Lawson, Deceased, Appellants,**

v.

**B FOUR CORPORATION, D/B/A Quality Turf Grass, Appellee.**

No. 01–93–00411–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 11, 1994.

Rehearing Overruled Dec. 15, 1994.

---

James A. Morris, Jr., Beaumont, for appellants.

Kent M. Adams and Kevin M. Fuller, Beaumont, for appellee.

Before HUTSON–DUNN, WILSON and DUNN, JJ.

## OPINION

HEDGES, Justice.

The issue before us is the extent of the duty a landowner owes to travelers on a roadway abutting his property. Appellants challenge a summary judgment entered in favor of B Four Corporation, d/b/a Quality Turf Grass ("Quality"). We affirm.

### Facts

Harrington Transport ("Harrington") and Quality had an agreement whereby Harrington delivered turf grass to Quality. Most of the deliveries were made at night to avoid interference with Quality's daytime business. At night, there were no Quality employees present to supervise the unloading of grass.

Both entrances to Quality's premises abut F.M. 1960 and were secured at night by wire cables stretched across the entrance-ways

and padlocked to cement posts. The drivers were given the combination to the lock in order to let themselves in to make deliveries. Quality required that the last delivery driver of the night secure the cable behind him as he leaves.

There were no adjacent parking areas in which drivers could park the delivery trucks while locking the cable. Nor was there a shoulder on F.M. 1960 in front of Quality's premises on which a delivery truck could be parked. In order to lock the gate, drivers customarily made a left-hand turn out of Quality's driveway, crossed the three eastbound lanes of traffic, and parked their trucks either in the turning lane headed west or in the extreme outside lane headed west. They would switch on their hazard lights, leave the truck, cross the highway on foot, and lock the gate.

On March 26, 1991, at 2:00 in the morning, Harrington employee John Swinner had just completed a delivery of grass to Quality. As he left Quality's premises, he heard a "pop" in the rear of his trailer. He suspected that the sound might indicate that his trailer was losing an axle. Swinner stopped his cab with the empty flatbed bed blocking all three eastbound lanes of traffic on F.M. 1960 and went to the rear of the truck to inspect the axle. During his inspection, he noticed a Jeep truck driving rapidly towards him. His attempts to flag down the driver were unsuccessful. The driver of the Jeep, Randol Lawson, was killed when his vehicle collided with the flatbed part of the truck.

### Cause of Action

Lawson's survivors sued Quality and Harrington for negligence.[1] Appellants alleged that Quality was liable for the following acts or omissions:

1. Failure to provide adequate parking for delivery trucks;

2. Failure to provide employee assistance during a business activity;

3. Inadequate lighting;

4. Inadequate warnings regarding the presence of parked vehicles;

5. Breach of the duty to protect the traveling public from highway obstructions; and

6. Creating a dangerous circumstance for the traveling public by failing to supervise the unloading of grass by HARRINGTON TRANSPORT CO. on the occasion in question.

▬ To prevail in a suit for negligence, a plaintiff must establish the existence of a duty owed to him, the breach of that duty, and damages proximately caused by a breach of that duty. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). We must first determine what duty, if any, Quality owed to Lawson. The determination of duty is a question of law the court must decide based on the specific facts of the case. *Id.*

On appeal, appellant raises two points of error:

1. The trial court erred in granting summary judgment since a fact issue exists as to whether Quality Turf Grass used ordinary care in the exercise of its control over Harrington Transport, Inc.

2. The trial court erred in granting summary judgment in that a fact issue exists as to whether Quality Turf Grass exercised ordinary care in the control of its premises.

The threshold question in this appeal is not the existence of fact issues concerning breach of duty, but the existence of the duty itself. Only if we find that Quality owed Lawson a duty under these circumstances do we inquire about the existence of genuine issues of material fact to support a breach of that duty.

### Standard of Review

In reviewing the granting of a motion for summary judgment, this Court will take all evidence favorable to the non-movant as true. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Every reasonable inference will be resolved in his favor. *Continental Casing Corp. v. Samedan Oil Corp.*,

---

1. Harrington settled appellants' claims and was dismissed from the suit.

751 S.W.2d 499, 501 (Tex.1988); *Goldberg*, 775 S.W.2d at 752. As movant, a defendant has the burden of showing that there are no genuine issue of material fact concerning one or more of the plaintiff's causes of action, and that it is entitled to judgment as a matter of law. *Goldberg*, 775 S.W.2d at 752.

### Duty to the Travelling Public

■ There is a general rule in Texas that an owner or occupier of premises abutting a highway has a duty to exercise reasonable care to avoid endangering the safety of persons using the highway as a means of travel, and is liable for any injury that proximately results from his negligence. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981); *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189, 191 (Tex.App.—San Antonio 1988, writ denied).

In *Kraus*, Alamo National Bank acquired an old building and made arrangements for an independent contractor to demolish it. During demolition, a wall fell into the street and struck Mrs. Kraus' car, killing her and injuring her son. The court concluded that the occurrence had been clearly foreseeable. The officers and directors had an unobstructed view of the building's deteriorating condition from their offices across the street. The west wall of the building leaned into the street for as long as two weeks before the collapse. A television station broadcast an interview with a safety engineer about the wall and the potentially dangerous condition it created. At noon on the day of the collapse, someone notified a Bank officer that the wall was leaning. She in turn notified the vice president in charge of the demolition project, who took no action. Under these facts, the Bank had a duty to protect the driving public from the collapsing wall because the risk of its collapse was undoubtedly foreseeable.

■ Every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). In determining whether a duty exists, courts consider the risk, foreseeability, and likelihood of injury, and weigh these factors against the social utility of the actor's conduct, the burden of guarding against the

injury, and the consequences of placing the burden on the defendant. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994). Foremost and dominant among these considerations is foreseeability of the risk. *El Chico*, 732 S.W.2d at 311; *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983). As the Texas Supreme Court has observed, "[i]f the reason to anticipate the injury is not established, then no duty arises to act to prevent such an unanticipated injury." *Houston Light & Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603, 606 (1960).

Two recent cases which have addressed a landowner's duty to exercise reasonable care for the safety of travelers on the highway focus on foreseeability. In *Naumann*, the owner of a sheetrock plant was sued for negligently designing his plant. The basis of the plaintiff's complaint was that drivers were required to exit onto a side road rather than directly on the highway. 749 S.W.2d at 190. As a result, the drivers had to proceed 264 feet to a stop sign and make a wide right turn onto F.M. 78. In so doing, the trucks blocked both lanes of the road.

Another exit from the plant fed directly onto F.M. 78 and might not have required the trucks to block both lanes. The owner concluded that the first exit was the safest because there was a stop sign and a railroad warning sign on the side road. The accident occurred when a car travelling in the westbound lane struck a tractor-trailer as it blocked both lanes of the highway negotiating the right turn onto F.M. 78. Under these facts, the court held that although the landowner knew of the propensity of the truck drivers to block both lanes when turning, it had the right to expect the drivers to exercise due care and to enter the highway safely. *Id.* at 192.

*Carter v. Steere Lines, Inc.*, 835 S.W.2d 176 (Tex.App.—Amarillo 1992, writ denied), involves a similar set of facts. In that case, truck drivers were required to weigh their vehicles at the plant on the north side of the road, travel 130 feet down the road, turn left, and have their trucks loaded at the plant on the south side of the road. *Id.* at 178. The same company owned both facilities. The

accident occurred when a car attempted to pass the truck on the left as it was making the turn into the plant on the south side of the road.

In evaluating whether the owner of the plant had a duty to the motorist killed in the accident, two of the three justices focused on the issue of foreseeability. Justice Dodson was not persuaded that the owner owed the decedent a "legal duty to anticipate or foresee his or the third party's negligent acts." Justice Boyd concluded that the owner could not reasonably have foreseen that (1) as a result of its actions, the truck drivers loading at its facility would engage in negligent or unlawful conduct, or (2) an accident would occur in the absence of negligence by the truck drivers.

In the case before us, we find that it was not reasonably foreseeable that a driver exiting Quality's premises and locking the cable behind him would park his truck across three lanes of traffic.[2] There is no general duty assigned to a landowner to see that his independent contractor performs his work in a safe manner.[3] *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985). The law does not require that a person anticipate negligent or unlawful conduct of another. *DeWinne v. Allen*, 154 Tex. 316, 277 S.W.2d 95, 98 (1955).

In *Naumann*, the court held that it was reasonable for the owner to expect its drivers to exercise due care in entering the highway notwithstanding the fact that the narrowness of the road and the length of the tractor-trailer created a potentially dangerous situation. 749 S.W.2d at 192. Under this rationale, it was reasonable for Quality to expect that Swinner would exercise due care in exiting its premises, securing his truck, and locking the cable.

We find that there are no genuine issues of material fact which preclude summary judgment.

We overrule points of error one and two.

We affirm the judgment of the trial court.

---

2. In reaching this holding, we do not express any opinion about the foreseeability of potential accidents caused by trucks exiting the premises and parking in the turning lane or in the extreme outside lane, as was customary.

3. Appellants also argue that fact issues exist regarding Quality's liability under the Restatement because the actions required of Swinner by Quality could be characterized as "inherently dangerous." Because appellants did not present this argument to the trial court, it can not be considered for the first time on appeal. Tex.R.Civ.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979).