Opinion issued December 5, 2002











In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00167-CV






STEVEN A. WOLFSON, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF SANDRA WOLFSON, DECEASED,
DEBORAH WOLFSON TASDEMIROGLU, SHARON WOLFSON MULKIN,
AND JACOB BENJAMIN WOLFSON, Appellants


V.


BIC CORPORATION, Appellee






On Appeal from the 269th District Court

Harris County, Texas

Trial Court Cause No. 96-59549






O P I N I O N

 We must determine if summary judgment was properly granted in favor of
appellee, BIC Corporation, in this combined wrongful death and survival action
appealed by appellants, Steven A. Wolfson (individually and as personal
representative of the estate of Sandra Lee Wolfson); Deborah Wolfson Tasdemiroglu,
Sharon Wolfson Mulkin, and Jacob Benjamin Wolfson. Appellants alleged multiple
causes of action including, strict products liability, misrepresentation, negligence, and
violations of the Deceptive Trade Practices--Consumer Protection Act (DTPA). 
Appellants present three issues, asserting the trial court erred in granting summary
judgment because (1) appellants' expert testimony was improperly excluded, (2) the
evidence presented was sufficient to defeat BIC's traditional and no evidence motions
for summary judgment, and (3) Steven Wolfson had standing to bring a survival
action. We affirm.

Background

 Upon arriving home on the evening of September 21, 1993, Steven Wolfson
found his wife, Sandra, lying dead on the kitchen floor. The cause of her death was
later attributed to first-and second-degree burns covering over 70 percent of her body. 
Appellants alleged the decedent was engulfed in flames as she lit a cigarette with a
defective butane lighter. Law enforcement and fire department personnel determined
that, while she was on fire, the decedent had traveled throughout the house and into
the back yard to sources of water in an attempt to extinguish herself. The decedent
had been at home alone at the time of the incident. 

 Investigators recovered portions of a burned, mini-BIC lighter from the
Wolfson's kitchen. Also recovered from the scene were matches, including a burned
match discovered in the back yard, and several other lighters found in the living
room. Although fire department personnel established the Wolfson's living room
sofa as the area of the fire's origin, no conclusive determination was made regarding
the ignition source of the fire. 

Procedural History

 After filing its second amended answer, BIC filed a motion for summary
judgment and a motion to exclude appellants' expert testimony and evidence. The
trial court granted BIC's motion to exclude expert testimony and evidence and
subsequently granted BIC's supplemental motion for summary judgment. The trial
judge signed its final take-nothing judgment on November 10, 2000.Discussion

 Summary judgment is proper only when a movant establishes there is no
genuine issue of material fact and the movant is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640,
644 (Tex. 1995); Lawson v. B Four Corp., 888 S.W.2d 31, 34 (Tex. App.--Houston
[1st Dist.] 1994, writ denied). "The purpose of summary judgment is the elimination
of patently unmeritorious claims or untenable defenses; it is not intended to deprive
litigants of their right to a full hearing on the merits of any real issue of fact." 
Levesque v. Wilkens, 57 S.W.3d 499, 503 (Tex. App.--Houston [14th Dist.] 2001, no
pet.) (quoting Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952)). In reviewing
a summary judgment, we must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. Johnson, 891 S.W.2d at 644; Lawson,
888 S.W.2d at 33. We take all evidence favorable to the non-movant as true. 
Johnson, 891 S.W.2d at 644. 

 A defendant is entitled to summary judgment if the evidence disproves, as a
matter of law, at least one element of each of the plaintiff's causes of action. Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Marchal v. Webb, 859
S.W.2d 408, 412 (Tex. App.--Houston [1st Dist.] 1993, writ denied). After the
defendant produces evidence entitling it to summary judgment, the burden shifts to
the plaintiff to present evidence creating a fact issue. Walker v. Harris, 924 S.W.2d
375, 377 (Tex. 1996). 

Expert Witness Testimony

 In issue one, appellants argue that the trial court abused its discretion by
excluding the expert testimony of Dr. Geremia and Rippstein. Appellants designated
Dr. Geremia and Rippstein to testify "on the subject of the [BIC] lighter's defect and
the lighter's role in the death of Ms. Wolfson." BIC argues that (1) Dr. Geremia's
testimony was properly excluded because it was speculative; (2) Rippstein was not
qualified as an expert; and (3) Rippstein's testimony was properly excluded because
it was speculative. 

 After a hearing on BIC's motion to exclude the appellants' expert testimony
and evidence, the trial court made the following findings:

 1. Dr. Geremia did not meet the reliability and relevance criteria of E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995) and its progeny. 
Specifically the theories and techniques used by Geremia were (1) not shown
to be based on theories or techniques that could and were tested; (2) too
dependent upon the subjective interpretation of the expert; (3) not, nor have
they [theories and techniques] ever been, subjected to peer review; (4) not
shown to have a known or potential rate of error that would, in turn, permit the
court to determine the technique's reliability; (5) not shown to be generally
accepted by the relevant scientific community; and (6) not shown to be used
in non-judicial applications such as published treatises on fire investigation
and accident reconstruction; and

 

 2. Mr. Rippstein, having failed to qualify as having any meaningful level of
knowledge in lighter design, accident reconstruction and further lacking any
independent opinion on lighter design, product defect or accident
reconstruction, failed to offer any opinions that would be material to this
product liability action, and such opinions and testing as he did offer or
perform also failed to meet the above criteria. Specifically, the testing
methodology used by Mr. Rippstein was not reliable, did not follow any
recognized scientific method or protocol and was completely undocumented. 
As such, the witnesses' proffered testimony is neither reliable nor relevant to
this case. 


 Prior to examining the trial court's findings, we will review the relevant law
applicable to expert testimony. 

Determining an Expert's Qualifications

 Rule 702 of the Texas Rules of Evidence permits a witness qualified as an
expert by knowledge, skill, experience, training, or education to testify on scientific,
technical, or other specialized subjects if the testimony would assist the trier of fact
in understanding the evidence or determining a fact issue. Tex. R. Evid. 702;
Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998). As a
preliminary question, the trial court must assess whether an expert is qualified to
testify on a given subject. Gammill, 972 S.W.2d at 718. The party offering the
expert's testimony bears the burden to prove the witness is qualified under Rule 702. 
Id. "The offering party must demonstrate that the witness 'possess[es] special
knowledge as to the very matter on which he proposes to give an opinion.'" Id.
(quoting Broders v. Heise, 924 S.W.2d 148, 152-153 (Tex. 1996)). 

 We may not disturb the trial court's determination that the witness is or is not
qualified as an expert unless an abuse of discretion is shown. Id. at 718-19. 
Consequently, we will not conclude the trial court has abused its discretion simply
because, in the same circumstances, we would have ruled differently, or if the trial
court committed a mere error in judgment. Hernandez v. State, 53 S.W.3d 742, 750 
(Tex. App.--Houston [1st Dist.] 2001, no pet). Instead, we are to gauge an abuse of
discretion by determining whether the trial court acted without reference to any
guiding rules or principles. E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d
549, 558 (Tex. 1995). Thus, a trial court enjoys wide latitude in determining whether
expert testimony is admissible. Hernandez, 53 S.W.3d at 750. 

Determining the Relevance and Reliability of an Expert's Methodology

 The relevance requirement, which incorporates traditional relevancy analysis
under Texas Rules of Evidence 401 and 402, is met if the expert testimony is
"sufficiently tied to the facts of the case that it will aid the jury in resolving a factual
dispute." Exxon Pipeline Co. v. Zwahr, 45 Tex. Sup. Ct. J. 651, 694 (May 23, 2002)
(quoting Robinson, 923 S.W.2d at 556). Evidence that has no relationship to any
issue in the case does not satisfy rule 702 and is thus inadmissible under rule 702, as
well as under rules 401 and 402. Id. 

 When the reliability of an expert's testimony is challenged, the trial court must
"gauge" the expert's reliability by ensuring "that the opinion comports with
applicable professional standards outside the courtroom." Helena Chem. Co. v.
Wilkins, 47 S.W.3d 486, 499 (Tex. 2001) (quoting Gammill, 972 S.W.2d at 725-26). 
If expert testimony is not reliable, it is not evidence. (1) Merrell Dow Pharmaceuticals,
Inc. v. Havner, 953 S.W.2d 706, 721-29 (Tex. 1997). 

 In Robinson, the Texas Supreme Court identified six nonexclusive factors to
determine whether an expert's testimony is reliable and thus admissible. Wilkins, 47
S.W.3d at 499. Those factors include, but are not limited to (1) the extent to which
the theory has been or can be tested, (2) the extent to which the technique relies upon
the subjective interpretation of the expert, (3) whether the theory has been subjected
to peer review and publication, (4) the technique's potential rate of error, (5) whether
the underlying theory or technique has been generally accepted as valid by the
relevant scientific community, and (6) the non-judicial uses which have been made
of the theory or technique. Robinson, 923 S.W.2d at 557.

 However, the court, in Gammill, recognized that the Robinson factors may not
apply to certain testimony. Gammill, 972 S.W.2d at 726. In those cases, there still
must be some foundation for the opinion offered to show its reliability. Id. If an
expert relies upon unreliable foundational data, any opinion drawn from that data is
likewise unreliable. Havner, 953 S.W.2d at 714. "Further, an expert's testimony is
unreliable even when the underlying data is sound if the expert's methodology is
flawed." (2) Id. 

 Having set forth the relevant law regarding expert testimony, we now address
appellants' first issue. 

Dr. Geremia's Testimony

 Dr. Geremia has a bachelor's degree in chemical engineering from Columbia
University and master's and doctorate degrees from George Washington University
in mechanical engineering. Among his studies, Dr. Geremia has over 20 years'
experience investigating fires caused by lighters. Because BIC did not object to Dr.
Geremia's qualifications, we proceed to evaluate whether his principles, research, and
methodology underlying his conclusions are relevant and reliable. 

 Appellants concede that Dr. Geremia was not asked to reconstruct the failed
lighter, but to evaluate available data and form relevant opinions. Dr. Geremia
concluded that the partially melted mini-BIC butane lighter experienced a "failure to
extinguish" and exploded in the decedent's pocket. The failure to extinguish, Dr.
Geremia asserted, was most likely caused by a design defect, such as an unsealed
valve, that allowed debris to enter the valve during normal use. (3) Dr. Geremia testified
that the size of the design defect gap was about one one-thousandth of an inch. 

 Dr. Geremia's conclusion was developed through a series of assumptions. 
First, he assumed that a post-manufacture piece of debris entered the lighter casing
through a one-thousandth of an inch gap, and traveled in a downward direction
coming to rest between the globe seal and track. The debris then caused the globe
seal to remain open, allowing butane to escape and creating a "nearly invisible blue
flame." Second, he assumed the decedent used the BIC lighter to light a cigarette. 
Upon lighting the cigarette, the decedent then placed the BIC lighter inside her blue
jean pocket. According to Dr. Geremia, the small flame persisted inside the pocket
and eventually melted the top of the mini-BIC lighter, causing it to rupture. Third, Dr. Geremia assumed that, without being lit, liquid butane then passed
through the flame that melted the top of the lighter. Once the butane dispersed
between the decedent's clothes and her body, it ignited, resulting in the decedent's
being consumed by flames. 

 We now turn to our analysis of Dr. Geremia's conclusion to determine whether
the trial court abused its discretion by excluding his testimony. Applying the
Robinson factors to Dr. Geremia's accident reconstruction, we conclude that he (1)
has not observed, performed, or attempted to perform any test which may duplicate
or verify a failure to extinguish in a mini-BIC lighter, (2) relies heavily on his own
subjective assumptions that debris entering the lighter caused it to explode, (3) has
neither published a work on the theory of failure to extinguish, nor is he aware of any
such publication, (4) did not provide any evidence relating to the potential rate of
error, (4) (5) offered no evidence whether the failure to extinguish theory has been
generally accepted as valid by the relevant scientific community, and (6) he has not
demonstrated the non-judicial uses which have been made of the theory. 

 Further, the court, in Robinson, warned experts to avoid coming to a firm
conclusion first and then doing research to support those conclusions--this is the
antithesis of the scientific method. Robinson, 923 S.W.2d at 559. With that warning
in mind, we note the following testimony by Dr. Geremia:

 BIC's COUNSEL: Now, typically, in order to verify that there is
debris on a globe seal that could prevent a
lighter from failing to extinguish, what you
would most like to have is the actual globe
seal itself so that you could expect--inspect it
under a microscope . . . correct?

 DR. GEREMIA: That is what I'd like to have and that is what
I would normally do if I do have it [globe
seal].

 BIC's COUNSEL: In this particular case, we don't have the
globe seal, do we?

 DR. GEREMIA: That is correct.

 BIC's COUNSEL: In this particular case we don't have any of
the lighter parts that you would normally
prefer to have so that you could make a
physical microscopic . . . inspection of the
parts . . . correct?

 DR. GEREMIA: Well we don't have the globe seal inject,
which are the critical items for that type of
examination (emphasis added). 


 Because essential valve components were never recovered for examination, we
hold that Dr. Geremia formed a conclusion and then based an opinion on his
conclusion. Accordingly, we cannot conclude that the trial court abused its discretion
by excluding Dr. Geremia's testimony. 

 Having excluded the testimony of Dr. Geremia--the only testimony offered to
establish causation--and assuming, without deciding, that (1) Rippstein was qualified
to testify, and (2) Rippstein's testimony would be relevant, we hold that his
[Rippstein's] testimony alone would not be sufficient to sustain appellants' cause of
action. In support of our holding, we note the following testimony by Rippstein: BIC's COUNSEL: Now it's not your business and you're not
here today to tell this Court why the lighter in
question failed to extinguish.

 MR. RIPPSTEIN: No, I don't plan to do that.

 BIC's COUNSEL: Because you don't know why.

 MR. RIPPSTEIN: No, I do not.

 BIC's COUNSEL: You don't know whether it's a product defect
or some internal contaminant to the lighter or
anything like that, do you?

 MR. RIPPSTEIN: All I could say is I don't know why it failed.

 BIC's COUNSEL: So what is your purpose in this case?

 MR. RIPPSTEIN: To tell how the fire started and where it
started. 

 After reviewing the entire record, we hold that Mr. Rippstein did not testify
regarding causation, an essential element of appellants' causes of action, and the trial
court properly excluded Dr. Geremia's testimony, the only offer of any proof of
causation for any of appellants' causes of action. We overrule appellants' first issue,
and thus conclude, that the trial court properly granted BIC's motion for summary
judgment in the absence of any proof of causation. Therefore, we do not reach
appellants' issues two or three. 








Conclusion

 We affirm the trial court's judgment.




 Frank C. Price

 Justice


Panel consists of Justices Taft, Alcala, and Price. (5)

Publish. Tex. R. App. P. 47.4.
1. "In light of the increased use of expert witnesses and the likely prejudicial
impact of their testimony, trial judges have a heightened responsibility to
ensure that expert testimony shows some indicia of reliability." Robinson, 923
S.W.2d at 553. The role of the trial court is not to determine the truth or the
falsity of the expert's opinion. Id. at 558. Instead, the trial court engages in
the initial determination of whether an expert's opinion is relevant and whether
the methods and research upon which it is based are reliable. Id. 
2. Other courts have likewise recognized that something is not so simply because
"an expert says it is so." Havner, 953 S.W.2d at 712 (citing Viterbo v. Dow
Chem. Co., 826 F.2d 420, 421 (5th Cir. 1987)). When the expert "br[ings] to
court little more than his credentials and a subjective opinion," this is not
evidence that would support a judgment. Id. "The Fifth Circuit in Viterbo
affirmed a summary judgment and the exclusion of expert testimony that was
unreliable, holding that '[i]f an opinion is fundamentally unsupported, then it
offers no expert assistance to the jury.'" Id. (quoting Viterbo, 826 F.2d at
422).
3. According to Dr. Geremia, common causes for failure to extinguish include (1)
debris in the valve under the globe seal or around the jet, and (2) a poorly
crimped globe seal or a globe seal with no crimp at all. He stated, however,
that debris is the most common cause for failure to extinguish.
4. Dr. Geremia did, however, testify that the failure rate of a mini-BIC lighter is
on the order of one in millions. 
5. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.