Opinion issued July 22, 2004



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01077-CV




TRACY SUTTLES AND TS–CLARE, INC., Appellants

V.

THE THOMAS BEARDEN COMPANY, Appellee




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2001-58037




OPINION ON MOTION FOR REHEARING
          Appellee, The Thomas Bearden Company (“TBC”) has filed a motion for
rehearing and first supplemental motion for rehearing. We grant rehearing, withdraw
our opinion of February 26, 2004, issue this new opinion in its stead, and vacate our
February 26, 2004 judgment.
          This is an appeal from a summary judgment in favor of TBC and against
appellants, Tracy Suttles and TS–Clare, Inc. (“TS–Clare”). At issue in this case is
appellants’ liability on a promissory note. Appellants raise eight issues on appeal: (1)
whether the trial court erred in granting TBC’s motion for partial summary judgment
as to Suttles, (2) whether the trial court properly construed a facially unambiguous
promissory note, (3) whether the trial court, if the promissory note was ambiguous,
failed to recognize material fact issues arising from the competing interpretations, (4)
whether Suttles can be held individually liable on the promissory note, (5) whether
material fact issues existed with respect to the capacity in which Suttles signed the
promissory note, (6) whether Business and Commerce Code, subsection 3.402(b)(1)
governed the promissory note, (7) whether the promissory note is void and
unenforceable under Revised Civil Statute article 6573a sections 20 and 26, and (8)
whether material fact issues existed as to the consideration supporting the promissory
note.
          We reverse and remand as to Tracy Suttles but affirm as to TS–Clare, Inc.
Facts & Procedural History
          On June 28, 1999, Suttles signed a one-page promissory note payable to TBC
in the principal amount of $250,000. The note stated, in relevant part, as follows:
FOR GOOD AND VALUABLE CONSIDERATION, the undersigned
Borrowers, jointly and severally, do hereby promise to pay to Thomas
Bearden


 (Lender), the amount of $250,000, together with interest
accrued at the rate of 7% percent [sic] per annual [sic]. Said amount is
to be payable in 36 installments of Interest Only, the first of which is
due on or before 25th of August, and following payments to be made on
the 25th of each Month.




          Suttles signed the note twice. His first signature appeared below the typed
written body of the note as follows:
Gessner Partners Ltd.___



TS Clare, Inc., General Partner
Tracy Suttles, President
/s/ Tracy Suttles 
Borrower

In an empty space at the bottom of the page, the parties wrote a handwritten
amendment to the note. Suttles again signed below the handwritten amendment, as
did Bruce Ripper, the president of TBC. The amendment and parties’ signatures
appeared on the note as follows:
Interest will accrue from Oct 17, 1997. A $50,000 principal payment
will be due June 28, 2000.
                                                                        /s/ Bruce Ripper 
                                                                        /s/ Tracy Suttles 

          On September 14, 2000, TBC gave appellants notice that the note was in
default and demanded payment in the total sum of $290,523.18. On November 9,
2001, TBC sued on the note, naming Suttles, NBC Properties, Inc., TS–Clare, and
Gessner as defendants. On March 8, 2002, TBC requested a partial summary
judgment on its claims against both TS–Clare and Suttles. The trial court granted
TBC’s motion for partial summary judgment against both TS–Clare and Suttles on
July 9, 2002, after which TBC dismissed its remaining claims, making the partial
summary judgment final.
Standard of Review
          A traditional summary judgment under Rule 166a(c) is proper only when the
movant establishes that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Randall’s Food Mkts., Inc.
v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). In reviewing a summary judgment, we
indulge every reasonable inference in favor of the non-movant and resolve any doubts
in its favor. Johnson, 891 S.W.2d at 644; Lawson v. B Four Corp., 888 S.W.2d 31,
33 (Tex. App.—Houston [1st Dist.] 1994, writ denied). We take all evidence
favorable to the non-movant as true. Johnson, 891 S.W.2d at 644; Lawson, 888
S.W.2d at 33. When, as here, a summary judgment does not state the specific grounds
on which it was granted, a party appealing from the judgment must show that each of
the independent arguments alleged in the motion is insufficient to support the
judgment. Smith v. Houston Lighting & Power Co., 7 S.W.3d 287, 290 (Tex.
App.—Houston [1st Dist.] 1999, no pet.).
Liability on the Promissory Note
          In their first six issues on appeal, appellants contend that the trial court erred
in finding Business and Commerce Code, subsection 3.402(b)(1) did not shield
Suttles from liability on the note. Specifically, appellants assert that the face of the
note unambiguously showed that Suttles signed solely in his representative capacity
as the president of TS–Clare; therefore, subsection 3.402(b)(1) relieved him of
liability. In response, TBC contends that subsection 3.402(b)(1) is not applicable to
the note because (1) TS–Clare was not “identified” in the instrument and (2) the note
was ambiguous with regard to whether appellant signed solely in a representative
capacity. 
          To prevail on a motion for summary judgment to enforce a promissory note, a
plaintiff must establish that (1) a note exists, (2) the plaintiff is the legal owner and
holder of the note, (3) the defendant is the maker of the note, and (4) a certain balance
remains due and owing on the note. Blakenship v. Robins, 899 S.W.2d 236, 238
(Tex. App.—Houston [14th Dist.] 1994, no writ). To prove that the defendant is the
maker of the note, the plaintiff must present summary judgment evidence indicating 
 
 
that the defendant’s signature appears on the note or that a representative of the
defendant signed the note on the defendant’s behalf.


 
          Even if it is shown that a defendant signed as the maker of a note, the
defendant may nevertheless escape liability if the signature was made in a
representative capacity. Tex. Bus. & Com. Code Ann. § 3.402 (Vernon 2003). 
Indeed, if Business and Commerce Code, subsection 3.402(b)(1) applies to a note, the 
signatory is not liable as a matter of law.


 Id. § 3.402(b)(1). Subsection 3.402(b)(1)
provides as follows:
(b) If a representative signs the name of the representative to an
instrument and the signature is an authorized signature of the
represented person, the following rules apply:
 
(1)If the form of the signature shows unambiguously that
the signature is made on behalf of the represented
person who is identified in the instrument, the
representative is not liable on the instrument.

Id. (emphasis added).

                                         To determine the applicability of subsection
3.402(b)(1), we primarily consider the words used in
the statute itself. See Cities of Austin, Dallas, Fort
Worth, and Hereford v. Southwestern Bell Tel. Co., 92
S.W.3d 434, 442 (Tex. 2002). However, 
 
 
we may also consider the object to be attained by the statute, the circumstances
surrounding the statute’s enactment, legislative history, former statutory and common
law, and the consequences of a particular construction. Id. 
          The words used in an enactment shall be interpreted in their ordinary sense,
unless they are given a specific statutory definition. Osterberg v. Peca, 12 S.W.3d
31, 38 (Tex. 2000). We will also presume that the legislature used every word of a
statute for a purpose. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.
1981). We avoid construing a statutory provision in isolation from the rest of the
statute, considering the act as a whole and not just single phrases, clauses, or
sentences. Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 1985).
          In the instant case, as president of the corporation, Suttles was a representative
of TS–Clare. Relatedly, the parties do not dispute Suttles’s authority to bind
TS–Clare to the note. The note, itself, shows that TS–Clare was identified in the
signature block of the instrument. Also, the signature block identified Suttles as
president of TS–Clare. We conclude that, when Suttles signed the note’s signature
block, he did so as an authorized representative of TS–Clare. We further conclude
that TS–Clare was identified in the instrument and that the form of the signature
block showed unambiguously that Suttles’s signature was made on behalf of
TS–Clare. 
 
           We disagree with TBC’s contention that the “represented person” (i.e.,
TS–Clare) was not identified in the note. Although TS–Clare was never mentioned
in the body of the note, it was identified in the signature block in which Suttles
signed. Subsection 3.402(b)(1) merely requires that the principal be identified “in the
instrument.” Tex. Bus. & Com. Code Ann. §3.402(b)(1). There is no requirement
that the principal be identified in the body of the note.


 See id. We conclude that the
identification of TS–Clare within the note’s signature block was sufficient
“identification” under section 3.402(b)(1).
          We also disagree with TBC’s contention that the form of Suttles’s signature
failed to show unambiguously that the signature was made solely on behalf of
TS–Clare. We find the three ambiguities identified by TBC to be unpersuasive.           First, TBC directs this Court’s attention to the body of the note, which refers
to multiple borrowers and provides for joint and several liability among such
borrowers. This, TBC contends, is inconsistent with the notion that only
Gessner—and thus TS–Clare as its general partner—was meant to be liable on the
note, thereby creating ambiguity as to the capacity in which appellant signed. 
However, under subsection 3.402(b)(1), we do not look to the note as a whole to
discern whether representative capacity was ambiguous; we look only to the “form
of the signature” to insure that the signature, itself, unambiguously shows
representative capacity. See id. This analysis is more limited than that provided for
under former section 3.403—which directed courts to look to the “instrument” to
determine representative capacity—but is required to give effect to the changed
language of the statute.


 Compare Act of September 1, 1967, 60th Leg., R.S., ch.
785, § 3.403, 1967 Tex. Gen. Laws 2343, 2423 (amended 1995) with Tex. Bus. &
Com. Code Ann. § 3.402(b)(1). 
          Second, TBC contends that the signature block does not unambiguously show
that Suttles signed in a representative capacity because “although [Suttles] is
identified as ‘President,’ his signature does not indicate that he is signing for TS-
Clare, Inc. This could easily have been done by including the word ‘by’ in front of
his signature.” The comments to section 3.402 indicate that the revisions made to
former section 3.403 were for the purpose of providing further protection to agents
who sign negotiable instruments in their representative capacity. Tex. Bus. & Com.
Code Ann. § 3.402 cmt. 2. Thus, in drafting the new provision, the legislature
moved away from case law under the former provision that interpreted section 3.403
to require an obsequious adherence to a specific signature form. Id. As the drafters
state in the comments to the new provision
The approach followed by former Section 3-403 was to specify the form
of signature that imposed or avoided liability. This approach was
unsatisfactory. There are many ways in which there can be ambiguity
about a signature. It is better to state a general rule. Subsection (b)(1)
states that if the form of the signature unambiguously shows that it is
made on behalf of an identified represented person (for example, “P, by
A, Treasurer”) the agent is not liable. This is a workable standard for a
court to apply. 
Id. We conclude that, under revised section 3.402, a preposition was not required to
show Suttles’s representative capacity; it was enough that the signature identify
TS–Clare, Suttles, and the capacity in which Suttles signed on behalf of TS–Clare. 
          Finally, TBC contends that “the handwritten interlineations on the note are
consistent with an interpretation of individual liability in that there is no indication
of representative capacity whatsoever.” However, the signatures below the
handwritten amendment to the note are neither consistent nor inconsistent with any
theory of representative capacity. 
          Normally, a signature and any accompanying words are considered an
indorsement unless the accompanying words, terms of the instrument, place of the
signature, or other circumstances unambiguously indicate that the signature was made 
 
for a purpose other than indorsement. Tex. Bus. & Com. Code Ann. § 3.204(a)
(Vernon 2003). 
          In the instant case, both the placement of the signatures as well as the words
accompanying them suggest that the signatures were merely an attempt by the parties
to indicate on the face of the note that the handwritten portion thereof was an
authorized amendment to the original terms of the note. They do not suggest that
either Suttles or Bruce Ripper meant to become liable on the note as indorsers by
means of such signatures. Given the limited purpose for which the parties signed, we
conclude that Suttles’s failure to indicate his representative capacity when signing
below the handwritten amendment neither made him individually liable on the note
nor created ambiguity with regard to his signature on behalf of TS–Clare.
          We conclude that TBC has failed to show either that TS–Clare was not
identified in the note or that the form of Suttles’s signature was ambiguous as to his
representative capacity. 
          We hold that, as a matter of law, appellant’s signature on the note did not make
him individually liable on the note, pursuant to Business and Commerce Code,
subsection 3.402(b)(1); therefore, the trial court erred in granting summary judgment
as to Tracy Suttles.
          We sustain appellants’ first six issues on appeal.
 
Enforceability of Promissory Note
          In their seventh and eighth issues on appeal, appellants contend that the trial
court erred in granting summary judgment because they presented sufficient summary
judgment evidence to raise a material fact issue concerning their affirmative defense
of failure of consideration.
          Once a plaintiff establishes its right to summary judgment as a matter of law,
the burden then shifts to the defendant as nonmovant to present evidence that raises
a genuine issue of material fact, thereby precluding summary judgment. Parker v.
Dodge, 98 S.W.3d 297, 299 (Tex. App.—Houston [1st Dist.] 2003, no pet.). A
plaintiff who conclusively establishes the absence of a disputed fact issue will not 
be prevented from obtaining summary judgment merely because the defendant has
pleaded an affirmative defense. Wilson v. Gen. Motors Acceptance Corp., 897
S.W.2d 818, 823 (Tex. App.—Houston [1st Dist.] 1994, no writ). An affirmative
defense will prevent summary judgment only if the defendant comes forward with
summary judgment evidence sufficient to raise an issue of material fact on each
element of the defense. Parker, 98 S.W.3d at 300.
          The defense of failure of consideration defeats summary judgment if the
nonmovant alleges facts and presents evidence that the consideration in the agreement
was not received. Stewart v. U.S. Leasing Corp., 702 S.W.2d 288, 290 (Tex.
App.—Houston [1st Dist.] 1985, no writ). Generally, failure of consideration occurs
when, because of some supervening cause after an agreement is reached, the promised
performance fails. Id. A complete failure of consideration constitutes a defense to
an action on a written agreement. Parker, 98 S.W.3d at 301.
          Under common law, as long as something of real and legally cognizable value
is given in exchange for a promise to pay under a promissory note, the note is
supported by adequate consideration. See, e.g., Windham v. Alexander, Weston &
Poehner, P.C., 887 S.W.2d 182, 184 (Tex. App.—Texarkana 1994, writ denied). 
Similarly, under the Uniform Commercial Code, a promissory note is issued for
“value” if it is issued as payment of, or as security for, an antecedent claim against
any person, whether or not the claim is due. Tex. Bus. & Com. Code Ann.
§ 3.303(a)(3) (Vernon 2003). If the note is issued for value, consideration exists. Id.
          In the instant case, appellants contend that summary judgment was improper
because the parties proffered contradictory summary judgment evidence as to the
consideration for the note in question. Specifically, appellants contend that the
evidence raised a material fact issue as to whether the obligation that was evidenced
by the note was a loan or payment of a real estate commission. If the obligation was
for payment of a real estate commission, appellants assert that the note was void for
lack of adequate consideration because they were not obligated to pay TBC a real
estate commission under the Real Estate License Act.
 
          To determine whether a fact issue was raised as to the consideration supporting
the note, we must look to the summary judgment evidence introduced by the parties. 
          In support of its motion for summary judgment, TBC introduced the sales
contract from the real estate transaction underlying this dispute, which provided that
NBJ Houston, Inc. (“NBJ”)


 would pay TBC a brokerage commission of $446,250. 
TBC also filed the affidavit of Bruce Ripper, its president. Ripper’s affidavit gave
the following version of the events leading up to the execution of the note at issue:
2.This case arises from a real estate transaction in which Suttles
purchased three apartment buildings located on Gessner Boulevard
in Houston, Texas (the “Gessner Property”).
 
3.In 1997, NBJ owned the Gessner Property. It wanted to sell and
various real estate brokers attempted to locate a buyer. One of these
brokers was TBC. [TBC] had represented Suttles on previous
transactions. He introduced Suttles to [NBJ] as a potential purchaser
for the Gessner Property. . . . 
 
4.After this introduction, [NBJ] and Suttles negotiated and on June 25,
1997 entered into written contracts for the purchase and sale of each
of the Gessner properties. On September 3, 1997, these contracts
were merged into one agreement entitled Amended and Restated
Agreement of Sale and Purchase.
 
. . . . 
 
6.The contract provided that Suttles would purchase the Gessner
Property for the consideration of $13,825,000.00 cash at closing. It
also provided that NBJ, as seller, would pay to TBC an aggregate
commission equal to $446,250.00. . . . 
 
7.Suttles obtained financing for the purchase through a third party
lending institution named Berkshire Mortgage which agreed to lend 
$12,000,000.00 or approximately 86% of the purchase price to
Suttles.
 
8.Suttles was unable to obtain enough cash to cover the remaining
portion of the purchase price and the deal was about to fold. To save
the deal, he approached [NBJ] and TBC for money. Both agreed to
help Suttles get the money and close the deal.
 
9.[NBJ] agreed to contribute capital to Suttles through two means. 
First, NBJ-Houston, Inc. made three loans to Suttles in the aggregate
sum of $1,274,072.82. The sum of $1,000,000.00 was credited to
Suttles from the amounts due NBJ from the closing. The additional
sum of $274,072.82 was represented by two loan agreements and
such funds were transferred by NBJ to Suttles outside of the closing
of the Gessner Property. Second NBJ-Houston, Inc. agreed to
purchase an initial 15% interest in a limited partnership called
Gessner Partners, Ltd. (“Gessner”) for $200,000.00. Gessner was
created to take title to the Gessner Property. Tracy Suttles held an
ownership interest of 84% of Gessner and the corporation TS-Clare,
Inc. was named general partner with an interest of 1%. NBJ-Houston, Inc. also agreed to purchase an interest in another limited
partnership called Houston Oakridge Apartments, L.P. for the sum
of $50,000.00. This limited partnership held title to other property
not connected with the Gessner Property. These funds were credited
to Suttles from the amounts received by NBJ as seller at closing.
 
10.For its part, TBC agreed to loan to Suttles the sum of $378,000.00
from its total commission of $446,250.00. These funds were
credited to Suttles from the brokerage received by TBC at closing.

The note at issue evidences that the money owed by appellants to TBC was in
connection with the $378,000 loaned to appellants for the purpose of purchasing the
“Gessner Property.” 
 
          In response to TBC’s motion for summary judgment, appellants filed the
affidavit of Tracy Suttles. Suttles’s affidavit provided, in pertinent part, as follows:
3.The Note arises out of The Thomas Bearden Company’s (“Bearden”)
attempt to document a commission for the sale of real estate it
claimed in connection with a certain transaction involving the sale of
real estate.

          . . . . 
 
6.During the formation of Gessner and prior to October 16, 1997,
[TBC] said that [it] felt like he deserved a commission for procuring
[NBJ], a business prospect, in connection with the sale of NBJ’s real
estate to Gessner. Ripper wanted a 3% commission for helping to
put the deal together. Gessner does not have a written commission
agreement with TBC or Ripper. TBC received some of its claimed
commission at the time of closing. However, TBC did not receive
approximately $250,000 of the commission it claimed in connection
with the Gessner sale at the time of closing on October 16, 1997.
 
7.Ripper later attempted to document the $250,000 he believed TBC
was owed as a commission by having Gessner execute the Note. 
Ripper came to my office nearly two years after the Gessner deal
closed, complaining that he had not received payment on the alleged
commission agreement. The Note is the product of that conversation.

          We conclude that the summary judgment evidence presented by appellants (i.e.,
Tracy Suttles’s affidavit) did not raise a material issue of fact concerning each issue
of appellants’ affirmative defense. Appellants presented nothing to contradict the
clause in the sales contract providing that NBJ—not appellants—was responsible for
payment of the brokerage commission to TBC. Moreover, Suttles’s vague statements
in his affidavit failed to show that the obligation evidenced by the note was in return
for TBC’s brokerage services. Instead, the summary judgment evidence indicates that
TBC merely loaned appellants money that TBC was owed by NBJ as a brokerage
commission. Although the $378,000 TBC loaned appellants was earned by TBC as
a brokerage commission, the source from which the money was derived has no effect
on the value appellants received from the loan.
          We hold that appellants’ summary judgment evidence failed to raise a material
issue of fact concerning their affirmative defense of failure of consideration.
          We overrule appellants’ seventh and eighth issues on appeal.
Conclusion
          Having held that, as a matter of law, Tracy Suttles could not be held
individually liable on the basis of his signature on the note, and having further held
that appellant failed to present sufficient summary judgment evidence to raise a
material question of fact as to each element of their affirmative defense of failure of
consideration, we reverse and remand the summary judgment as to Tracy Suttles but
affirm the summary judgment as to TS–Clare.
 

                                                             Laura Carter Higley
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Higley.