Opinion issued November 24, 2004













In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01155-CV




FRESH BREW GROUP, USA, Appellant

V.

WASTE MANAGEMENT, INC., Appellee




On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2002-32053




MEMORANDUM OPINION
          Appellant, Fresh Brew Group, USA (Fresh Brew), sued appellee, Waste
Management, Inc., for breach of contract. The trial court granted Waste
Management’s motion for summary judgment, and Fresh Brew appealed. In two
issues,


 Fresh Brew complains that Waste Management did not establish its
entitlement to summary judgment because (1) it did not negate any element of Fresh
Brew’s claim and (2) it did not prove its affirmative defense based on the statute of
frauds.


 We affirm in part and reverse in part and remand for further proceedings. 
BACKGROUND
          Fresh Brew, a coffee and vending services company, provides its customers
with coffee and vending equipment, services, and products. Fresh Brew installs,
services, and maintains the equipment and sells coffee, other beverages, and snacks
to be dispensed by the machines. Fresh Brew and Waste Management entered into
written agreements that stated Fresh Brew’s equipment and billing policies and
provided for the length of the term of the agreement, cancellation, monthly fees, and
other terms. Each agreement also contained a dissatisfaction clause that provided for
cancellation in the event that the customer was dissatisfied with Fresh Brew’s service. 
These agreements, although similar in many respects, varied over the years.
          In November 1996, Fresh Brew began its relationship with Waste Management. 
Between November 25, 1996 and November 20, 2000, Fresh Brew and Waste
Management executed ten agreements in connection with the equipment, services and
products supplied by Fresh Brew to Waste Management. The term length of these
agreements varied from one to five years, but all provided for automatic annual
renewal thereafter, unless cancelled. 
          On September 26, 2000, both parties signed a Fresh-Brew agreement form (the
September contract). This agreement did not provide for the placement of any
equipment, but has written in the comments section, “This agreement is for pricing
adjustments for Waste Management (see attached). Prices will be effective upon
signing of agreement.” The term of the agreement and the dissatisfaction clause were
contained in the same paragraph as follows:
The term of this agreement is for five years and will automatically renew
annually thereafter. If you are dissatisfied with the service, please notify
us in writing the details of concern with our service, to our corporate
office, attention: Director of Customer Service. If we fail to bring the
level of service up to your expectations within 30 days, this agreement
may be cancelled and the unit removed within 30 days. 

A handwritten price list of products was attached to this agreement. The agreement
did not specify any type or quantity of products to be purchased by Waste
Management. The sections on “Billing Policy” and “Monthly Fees” were crossed out.
          On November 17, 2000, both parties signed a Fresh Brew agreement form (the
November contract) that differed in several respects from the September contract. 
This form did not have a “Monthly Fees” section. The term provision stated, “The
term of this agreement is for five years and will automatically renew annually
thereafter unless canceled by either party with a 30 day written notice.” The
dissatisfaction clause was in a separate section and stated, “If you are dissatisfied with
the service for any reason, and we fail to bring the level of service up to your
expectations, this unit may be removed with a 30 day written notice.” The agreement
showed that 13 Bunn, 7 FBG (Fresh Brew Group) Soda and 7 snack vending
machines were to be installed. Under “COMMENTS” it stated, “This will be a new
location for Wastemanagement [sic]. FBG will be installing a total of 13- 3 burner
automatic Bunn units, 7 soda & 7 snack machines in designated breakrooms.” The
agreement made three specific references to the sale of products: “Coffee &
Condiment supplies will be billed to you each month. Prices are based on current
coffee market conditions and will be adjusted accordingly”; “EMERGENCY Supply
Orders will be delivered within forty-eight (48) hours”; and “All products used with
this unit must be purchased from F.B.G.” There was no reference to any quantity of
products. 
          On April 1, 2002, Waste Management informed Fresh Brew by letter that they
would be ending the “coffee service contract” effective May 1, 2002 and asked Fresh
Brew to remove their equipment within seven working days. The letter further stated
that the “primary reason for this change is price” and that they “want[ed] to confirm
that Fresh Brew has been a good vendor for us.” 
          Fresh Brew sued Waste Management for breach of the September and
November contracts. Waste Management filed a motion for summary judgment. 
Seven days before the hearing on Waste Management’s motion for summary
judgment, Fresh Brew filed a second amended petition asserting that Waste
Management had breached all ten contracts. The trial court granted Waste
Management’s motion. 
DISCUSSION
          On appeal, Fresh Brew contends that the central component of the agreements
was the lease of the equipment, that the provision of services was secondary, and that,
incidental to the lease of equipment, Waste Management agreed to buy from Fresh
Brew all products to be used with the equipment. Fresh Brew argues that the
consideration required for a valid contract is found in its agreement to lease the
equipment and provide related services and Waste Management’s agreement to
purchase the products from Fresh Brew. Fresh Brew also complains that Waste
Management moved for judgment on only two of the ten contracts that were the basis
of Fresh Brew’s suit. 
          Waste Management responds that the two agreements were not valid and
enforceable contracts because they did not satisfy the statute of frauds and they were
too indefinite to be enforceable. Waste Management also contends that, even if the
agreements were enforceable contracts, they were not breached because Waste
Management had an “unfettered right” to terminate the contracts at its discretion. 
With regard to the eight contracts not addressed in the motion for summary judgment,
Waste Management argues that Fresh Brew’s amended petition did not preclude
summary judgment because all ten contracts contain similar language, and therefore
the amended petition raised no new grounds to be addressed. 
          We first consider whether the trial court properly rendered judgment on the
September and November contracts. We then consider whether the remaining eight
contracts raised new grounds to be addressed. 
I.       Standard of Review
          Summary judgment under rule 166a(c) is proper only when the movant
establishes that there is no genuine issue of material fact and that the movant is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Randall’s Food
Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Lawson v. B Four Corp.,
888 S.W.2d 31, 34 (Tex. App.—Houston [1st Dist.] 1994, writ denied). In reviewing
a summary judgment, we must indulge every reasonable inference in favor of the
nonmovant and resolve any doubts in its favor. Johnson, 891 S.W.2d at 644; Lawson,
888 S.W.2d at 33. We will take all evidence favorable to the nonmovant as true. Id. 
As movant, the defendant is entitled to summary judgment if the evidence disproves
as a matter of law at least one element of each of the plaintiff’s causes of action. Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Marchal v. Webb, 859
S.W.2d 408, 412 (Tex. App.—Houston [1st Dist.] 1993, writ denied). A defendant
moving for summary judgment on an affirmative defense must establish that defense
as a matter of law. Long Distance Int’l, Inc. v. Telefonos de Mexico, 49 S.W.3d 347,
350-51 (Tex. 2001). We will affirm the summary judgment if any of the theories
advanced in the motion for summary judgment and preserved on appeal is
meritorious. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996). 
II.      Were the agreements valid and enforceable contracts?
          In its first issue presented, Fresh Brew contends that the trial court erred in
rendering summary judgment in Waste Management’s favor because Waste
Management did not conclusively negate at least one element of Fresh Brew’s claim. 
Fresh Brew argues that courts should be reluctant to hold a contract void for
uncertainty or indefiniteness, but must view the entire document and interpret it in
light of the intent of the parties, which may be a question of fact. 
          A.      The September Contract
          Fresh Brew asserts that the September contract was a modification of the price
on the existing equipment lease agreements. 
          The September contract is not, on its face, a modification of an existing
equipment lease agreement. The comments hand-written on the document indicate
that it is a price adjustment, but the monthly fees for equipment are crossed out, and
the attached price list is for products: coffee, tea, juices, condiments, paper goods,
and plastic ware. The agreement is nothing more than an agreement by Fresh Brew
to sell products at the stated price and by Waste Management to purchase those
products, if at all, at that price. The four corners of the document do not establish any
obligation on Waste Management to purchase any products, nor does it establish any
obligation to use any Fresh Brew equipment. 
          Fresh Brew points to the language in the September contract that states, “All
products used with this unit must be purchased from [Fresh Brew]” and “Coffee &
Condiment supplies will be billed to you each month” as evidence of a valid and
binding contract. We first note that both statements are within the crossed-out
portion of the agreement. Even if they were not intended to be deleted from the
document, these statements do not provide a basis for requiring that Waste
Management make any purchases from Fresh Brew. In fact, Fresh Brew concedes on
appeal that “Waste Management was not obligated to purchase any products at all.”
          We conclude that the September contract is not valid and enforceable. 
Accordingly, we overrule Fresh Brew’s first issue as it relates to the September
contract.
 

          B.      The November Contract
           Fresh Brew contends that the November contract was for the lease of the
equipment itemized in the contract. Fresh Brew argues that the November contract
“expressly designates . . . which pieces of Fresh Brew equipment are being leased by
Waste Management.” Fresh Brew also refers to the provisions for monthly billing for
supplies and the use of only Fresh Brew products with the equipment as indications
of a valid and enforceable contract. 
          Whether an agreement is an enforceable contract is generally a question of law. 
Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663, 678 (Tex. App.—Houston [1st
Dist.] 1996, no writ). The terms of a contract must be sufficiently definite to enable
a court to determine the legal obligations of the parties. See T.O. Stanley Boot Co.
v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992). 
          The November contract designates certain equipment to be installed by Fresh
Brew in a Waste Management facility, although there is no language suggesting a
lease and there is no provision for a lease fee. The contract provides that “All
products used with this unit must be purchased from [Fresh Brew]” although no
specific quantity of products is specified. Thus, Fresh Brew agreed to supply certain
equipment, and Waste Management agreed to stock that equipment with products
purchased from Fresh Brew. Such an agreement is not so indefinite as to make it
impossible for a court to fix the legal obligations of the parties. We conclude that the
November agreement was a valid and enforceable contract. We next consider
whether Waste Management breached the November contract.
          The contract recites, “The term of this agreement is for five years . . . .” 
However, there is a dissatisfaction clause that provides, “If you are dissatisfied with
the service for any reason, and we fail to bring the level of service up to your
expectations, this unit may be removed with a 30 day written notice.” Although
Waste Management did not have an “unfettered right” to terminate the agreement at
its discretion, under this clause, Waste Management did not have to notify Fresh
Brew of its dissatisfaction in writing and did not have to allow any specified period
for Fresh Brew to improve its service.


 
          The deposition testimony attached to the motion for summary judgment
established that Fresh Brew was aware, before April 1, 2002, that Waste Management
was not satisfied with some of Fresh Brew’s services. Waste Management gave Fresh
Brew notice on April 1 that it was terminating the Fresh Brew contract effective May
1, 2002. The notice stated that the primary reason for the cancellation was price, but
that “other factors were involved.” 
          Fresh Brew argues that the contract does not permit cancellation because of
price. However, the contract’s dissatisfaction clause is very broad, stating, “If you
are dissatisfied with the service for any reason.” We conclude that this language
includes dissatisfaction with the price of Fresh Brew’s products.
          We hold that Waste Management complied with the November contract in its
termination procedures. We further hold that Waste Management did not breach the
November contract. 
          We overrule Fresh Brew’s first issue as it relates to the November contract. 
III.    The Remaining Eight Contracts
          Waste Management and Fresh Brew entered into seven contracts prior to the
September contract and one contract after the November contract. Waste
Management did not address these eight contracts in its motion for summary
judgment, but attempts to include them in this appeal by asserting that all ten
contracts contain similar language and are subject to the same analysis. We disagree.
          Five of the eight additional contracts are still in their primary term, and four of
them have dissatisfaction clauses with requirements that differ from that in the
November contract, including notification in writing of the details of the
dissatisfaction. By rendering a take-nothing judgment on Fresh Brew’s breach-of-contract claim, the trial court granted relief on issues that were not presented in Waste
Management’s motion. See Mafrige v. Ross, 866 S.W.2d 590, 592 (Tex. 1993)
(holding that if judgment grants more relief than requested, it should be reversed and
remanded), overruled on other grounds, Lehmann v. Har-Con Corp., 39 S.W.3d 191,
204 (Tex. 2001). 
CONCLUSION
          In light of our ruling on Fresh Brew’s first issue that the September contract
was not valid and enforceable and that the November contract was valid and
enforceable, but was not breached, we need not reach Fresh Brew’s second issue. 
          We affirm the judgment of the trial court that Fresh Brew take nothing on its
breach-of-contract claims with regard to the September and November contracts. We
reverse the judgment and remand the cause to the court below for further proceedings
with respect to the remaining eight contracts.
 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Hanks, and Higley.